1  Mark E. Merin, Esq, SBN 043849
   Cathleen A. Williams, Esq. SBN 68029
2  LAW OFFICE OF MARK E. MERIN
   2001 P Street, Suite 100
3  Sacramento, CA 95814
   Telephone:  (916) 443-6911
4  Facsimile:  (916) 447-8336
   E-Mail:  mark@markmerin.com
5
   Attorneys for Plaintiffs
6
                    UNITED STATES DISTRICT COURT
7
                    EASTERN DISTRICT OF CALIFORNIA
8

9  ANTHONY LEHR; CONNIE HOPSON; FLOYD      )  Case No.:  2:07-CV-01565 MCE GGH
   HOPWOOD; MICHAEL TINIUS; JACKI          )
10 FITZGERALD; JEREMY MCENTYRE; TAMMY      )  **FIRST AMENDED CLASS ACTION**
   JONES; MICHAEL MOORE; LINDSEY ALESSO;   )  **COMPLAINT FOR INJUNCTIVE**
11 VALERIE DUFOUR; RONALD HICKS; LOAVES    )  **AND DECLARATORY RELIEF**
   & FISHES, a California non-profit organization; )  **UNDER THE FOURTH, EIGHTH**
12 SACRAMENTO HOMELESS ORGANIZING         )  **AND FOURTEENTH**
   COMMITTEE "SHOC", an unincorporated     )  **AMENDMENTS; 42 U.S.C. § 1983**
13 association of homeless and formerly homeless )
   persons; FRANCIS HOUSE, a California non-profit )  **DEMAND FOR JURY TRIAL**
14 organization; and all others similarly situated, )
                                           )
15              Plaintiffs,                 )
   v.                                      )
16                                         )
   CITY OF SACRAMENTO; CITY OF             )
17 SACRAMENTO POLICE CHIEF ALBERT          )
   NAJERA, in his individual and official capacity; )
18 CITY OF SACRAMENTO POLICE OFFICER       )
   MIKE COOPER, in his individual and official )
19 capacity; CITY OF SACRAMENTO POLICE     )
   OFFICER MARK ZOULAS, in his individual and )
20 official capacity; CITY OF SACRAMENTO   )
   POLICE OFFICERS DOES 1 THROUGH 20;      )
21 SACRAMENTO COUNTY; SACRAMENTO           )
   COUNTY SHERIFF JOHN MCGINNESS, in his   )
22 individual and official capacity; SACRAMENTO )
   COUNTY PARK RANGER ANDERSON, in his     )
23 individual and official capacity; SACRAMENTO )
   COUNTY PARK RANGER MCELHENY, in his     )
24 individual and official capacity; SACRAMENTO )
   COUNTY PARK RANGER  BENNETT, in his     )
25 individual and official capacity; SACRAMENTO )
   COUNTY PARK RANGERS DOES 21 THROUGH )
26 40; and ROES 1-20,                      )
                                           )
27 _____Defendants._____ )

28
                                    -1-
   FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
   *Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

**INTRODUCTION**

This is an action for preliminary and permanent injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the ongoing violation by Defendants of the rights secured to the homeless Plaintiffs by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, applicable to Defendants under the Fourteenth Amendment.  Plaintiffs present two claims on their own behalf and on behalf of the class they seek to represent.

With respect to the first claim, the individual Plaintiffs are homeless persons who cannot find housing or adequate shelter in Sacramento County. They seek injunctive relief to stop Defendants from enforcing the City and County ordinances which prohibit homeless persons from sleeping outside in the City and County.  Defendants have used the enforcement of these ordinances and laws to cite Plaintiffs, and the class of homeless persons they seek to represent, because they are sleeping outside. As applied to these homeless Plaintiffs and the class, the enforcement of these laws violates the Eighth Amendment because it punishes them for the status of being homeless.

With respect to their second claim, Plaintiffs seek injunctive relief to stop Defendants from taking and destroying their personal property, without providing adequate notice and the opportunity to retrieve or reclaim personal possessions before they are destroyed, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.  As applied to these Plaintiffs and the class, the policy and practice of taking and destroying personal property, including necessary survival gear, as well as irreplaceable prescription medication, paperwork, memorabilia, valuables, and tools, is unconstitutional.

**JURISDICTION**

1.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that it arises under the Constitution of the United States); section 1343(a)(3) (in that it is brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution); and under § 1343(a)(4) (in that it seeks to obtain equitable relief under an Act of Congress, specifically, under 42 U.S.C. § 1983, and the Declaratory Judgment Act (28 U.S.C. §§ 2201(a) and 2202)).

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

2.      Venue is proper in the United State District Court for the Eastern District of California under 28 U.S.C. § 1391(b).  Defendants are located in the Eastern District and all the acts and/or omissions complained of herein have occurred or will occur in this District.

### GENERAL FACTUAL ALLEGATIONS

3.      According to Sacramento City and County's "Ten Year Plan To End Chronic Homelessness," adopted by the City Council and the County Board of Supervisors in 2005, in Sacramento City and County, an estimated 1,200 to 2,200 persons are homeless and in need of permanent housing on any given night; according to the Sacramento County Office of Education website, 5,332 children experienced homelessness during the 2004-2005 school year. In the early morning hours of January 30, 2007, an official count of homeless people was conducted: on that night, the total number of homeless people was 2,452. Of this total, 709 were housed in emergency shelters; 738 in transitional shelters; and 1,005 were unsheltered and sleeping in the streets, including 4 children and 17 seniors. The report found that the number of homeless people who were housed in emergency or transitional shelters remained fairly constant when compared to previous years, but the number of unsheltered homeless was "significantly higher," resulting in an almost 10% increase from 2005 to 2007.  The same report's "best estimates" of the number of persons who were homeless, annually, in Sacramento was 4,367 persons; 40% were on the street.

4.      A survey conducted in Sacramento in January 2005 demonstrated that 60% of the homeless met the criteria established by the U.S. Department of Housing and Urban Development (HUD) for being considered "chronically" homeless, that is, they were unaccompanied individuals with a disabling condition who had been homeless for a year or more, or, alternatively, had experienced at least four episodes of homelessness within three (3) years. According to HUD, a disabling condition is defined as a diagnosable serious mental illness, developmental disability, chronic physical illness, substance use disorder, or disability including the co-occurrence of two or more of these conditions.  In the January 2007 homeless count for Sacramento County, 215 of the homeless people in emergency shelters, and 503 of the homeless people who were unsheltered, were considered "chronically homeless."

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

5.      Rental housing in Sacramento is beyond the means of homeless people with no or minimum income below the poverty level, such as those on general assistance or supplemental security income; the waiting time for persons on waiting lists for public housing or subsidized housing is over two years, with thousands of persons waiting for housing. (Sacramento Self Help Housing Report, July 2003, "Affordable Housing for People with Extremely Low Incomes in the Sacramento Area".) Shelters in Sacramento City and County cannot accommodate all homeless people on any given night. Emergency shelters provide shelter on a first-come, first-served basis. According to a recent presentation by Bruce Wagstaff, Director of the County Department of Human Assistance, on a nightly basis there are 694 "emergency shelter" beds in Sacramento. (A few hundred more beds are available during the winter from November to March.)

6.      All emergency shelters limit stays to defined periods ranging from a few days to a few weeks. (Sacramento Self Help Housing Website, 6/18/07) Most shelters limit eligibility to defined classes of homeless people: the Salvation Army shelter, for example, has 100 beds, for single persons only, and limits each stay to 30 days with frequency decided on a case by case basis; Union Gospel Mission, with 60 beds, is available only to men, restricts stays to 7 days (after 3 nights away), and requires attendance at chapel every night. Other shelters are limited to families, to women escaping domestic violence, to under-age youth, or to women and children. (id.)

7.      "Transitional" shelter housing is typically reserved for those entering drug/alcohol recovery, the mentally ill, or the severely disabled. In Sacramento, transitional shelters have 1,092 beds, according to Bruce Wagstaff.

8.      Transitional shelter is temporary housing, with stays limited, for example, to periods of three to four months (Clean and Sober Living Program) or up to two years (for Bishop Quinn Cottage Housing). Upon discharge, program participants "do not acquire a significantly higher income that would provide them with new advantages in the housing market that they did not have before their entry into transitional housing" and they return to emergency shelters if they can. (Sacramento Self Help Housing Report, July 2003, "Affordable Housing for People with Extremely Low Incomes in the Sacramento Area".)

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

9.      While both City and County officials have publicly decried the conditions in which homeless people live, and supported various programs, at the same time it is the policy and custom of both the City and County to address the problem by citing homeless people for sleeping outside, in order to sweep homeless people from the areas along the American and Sacramento rivers, and from public and private property in the City, where they attempt to sleep without being disturbed during the night. Homeless people discovered sleeping, especially at night, are cited even though there is no other place for them to go. The goal is simple: cite homeless people to keep them on the move each night. The acts of Defendants alleged herein were all performed in the furtherance of this policy and custom.

10.      Further, pursuant to the policy and custom of the City and County of Sacramento, the sweeps of the homeless are often accompanied by the wholesale and immediate confiscation and destruction of their personal property, including sleeping gear, tents, cooking gear, clothes, prescription medicines (in other words, necessary survival equipment), bicycles, tools and papers and memorabilia which are difficult or impossible ever to replace. The acts of Defendants alleged herein were all performed in furtherance of this policy and custom.

11.      The Sacramento City and County Ten Year Plan recognizes that criminalization of the homeless is both expensive and ineffective.  "Chronically homeless individuals often cycle in and out of the criminal justice system – often for misdemeanor offenses directly related to the condition of homelessness.  Utilization of law enforcement personnel and jails to provide housing and treatment is an inappropriate and expensive use of public funds. . .  Outstanding legal issues present a significant barrier to homeless individuals who are attempting to re-enter society, seek employment or secure permanent housing.  It also puts an unnecessary burden on the criminal justice system to address the mental illness and substance abuse that are core issues for many homeless people."

12.      With respect to the plaintiffs and the class they represent, at the time of their citations, and upon the confiscation of their personal property, they were not committing any crime except "camping," that is, sleeping outside with survival gear such as a sleeping bag or tent, and other belongings.  Plaintiffs were and are involuntarily homeless, with no available

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

shelter or lodging accommodations, and intend to and must sleep or lodge outside in public, unsheltered, and have been and/or will be in the future cited. The ordinances and their enforcement by Defendants as set forth herein is an attempt by Defendants to deter Plaintiffs and the class they represent from performing the necessary life function of sleeping safely and at peace.

13.     Defendants' actions pose a dangerous health risk to Plaintiffs and the class, and, as a result, to the general public.  Sleep is a medical and physical necessity.  Small amounts of sleep loss (e.g. one hour per night over many nights) have subtle cognitive costs which appear to go unrecognized by the individual experiencing the sleep loss.  More severe restriction of sleep for even a week leads to profound cognitive defects similar to those seen in some stroke patients which also appear to go unrecognized by the individual.  Confiscation of blankets and sleeping bags increases risk of hypothermia and pneumonia.

14.     Plaintiffs and the class members have been cited and will continue to be cited for engaging in or attempting to engage in such activities.  Defendants' actions are likely to threaten the already precarious existence of Plaintiffs and the class by imposing or enforcing upon them health and safety hazards as well as economic and social hardship.

**PARTIES**

15.     Plaintiff ANTHONY LEHR has been homeless since 2001, when he exhausted the money he had received from Workers' Compensation for injuries sustained on the job as a carpenter. He is 45 years old. He must sleep outside on those nights he is not eligible for emergency shelter housing, given the limitation on the number of consecutive nights a homeless individual can use emergency housing in the County.  While Plaintiff LEHR is currently employed at plaintiff LOAVES & FISHES, his earnings are not enough for permanent housing.

16.     On February, 2007, while Plaintiff LEHR was absent at his job, a COUNTY work crew directed by defendant SACRAMENTO COUNTY PARK RANGERS DOES 21-40 confiscated and destroyed his tent, sleeping bag, winter coats and shirts, as well as food coupons from MacDonald's. Plaintiff LEHR had stored these items on the American River Parkway. He had nowhere else to keep them and could not transport them on his bicycle. Again, in April 2007,

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-1565 MCE GGH

at approximately 10:00 a.m., a work crew under the direction of Defendant PARK RANGER DOES 21-40 confiscated and destroyed his tent while he was present at the American River Parkway sites.  They did not allow him to remove the tent and keep it. On both occasions, Defendant COUNTY did not give notice or an opportunity for Plaintiff LEHR to reclaim his property. It was thrown into a COUNTY garbage truck.

17.     Plaintiff CONNIE HOPSON has been intermittently homeless since 1992. She is 54 years old.  She is unable to work because of health problems and receives $940 per month from SSI, which is not enough to rent permanent housing and have money for food, utilities, and other expenses. She is currently homeless and disabled due to a degenerative spinal disease, and she cannot stay very far from the homeless service provider plaintiff LOAVES & FISHES, which she relies upon for a daily meal. On June 29, 2006 when Plaintiff HOPSON  was sleeping on the sidewalk on Ahern Street in the City of Sacramento near LOAVES & FISHES, she received a criminal citation at 5:30 a.m. for camping which was issued by Defendant SACRAMENTO POLICE OFFICERS DOES 1-20. In August 2006, she was again criminally cited by SACRAMENTO POLICE OFFICER DOES 1-20 for illegal camping.  She had been sleeping on private property near LOAVES & FISHES, at 15th and C Streets in Sacramento. She had the permission of the owners to stay on the property as long as she was gone before the business opened for the day. The SACRAMENTO POLICE OFFICER DOES 1-20 also confiscated and destroyed, without notice or opportunity to reclaim, her clothes, sleeping bag, personal papers, bible, pictures, medication, and everything else, except two blankets. Her property was thrown into a trailer along with that of other homeless people. Since April 10, 2007, Plaintiff HOPSON has slept outside on a narrow strip of private property on North B Street near 12th Street, near the Salvation Army shelter, along with about ten other homeless people. All leave the property by 7 a.m.  She fears she will be cited and forced to move nightly because of the CITY'S policy of enforcing the camping ordinance.

18.     Plaintiff FLOYD HOPWOOD has been intermittently homeless since 2002. He is 56 years old. He has a disabling injury to his knee, and needs surgery, but he has not been able to arrange for surgery because he needs housing during the period of recuperation.  He is only

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

intermittently able to find shelter in homeless shelters because of waiting lists and maximum stay limitations.  His only income is $160 per month from General Assistance for a limited period – no more than three (3) months per year, as well as $155 a month in food stamps.

19.    On March 20, 2007, at about 6:30 a.m., Plaintiff HOPWOOD was cited by Defendant SACRAMENTO POLICE OFFICER MIKE COOPER for unlawful camping on Ahern Street at North B Street in the CITY OF SACRAMENTO in an early morning raid. A group of homeless people were cited at the time. Charges against Plaintiff HOPWOOD and others, who were required to come to court on May 17, were dismissed.

20.    Plaintiff MICHAEL TINIUS has been homeless since 1989. He is 47 years old. He has a dog and will not apply to stay in shelters because of the restrictions, the religious requirements, and because they do not accept pets.  His dog is necessary for security and companionship. He is not employed and has no income.

21.    On September 14, 2006, at 10 a.m. in the morning, when Plaintiff TINIUS was awakening after a night sleeping outside along the American River at North 10th Street, Defendant SACRAMENOT COUNTY PARK RANGER DOES 21-40, and Defendant SACRAMENTO COUNTY PARK RANGERS ANDERSON AND BENNETT, cited Plaintiff TINIUS for illegal storage of his property on public property. A COUNTY white clean up truck came behind the SACRAMENTO COUNTY PARK RANGERS DOES 21-40 with a COUNTY crew. One of the SACRAMENTO COUNTY PARK RANGERS DOES 21-40 told TINIUS to get out with what he could carry. He took his bicycle and trailer, his dog, dog  food, and water, which is all he could carry. He left behind two bicycles he was working on, his bike repair tools, bed roll, sleeping bag, tent, tarps, a dual burner Coleman stove, a camp shovel, knives and forks, clothes, boots, rain gear, a wheel chair, and food. All of this property was confiscated and destroyed without notice or opportunity to reclaim his property. This has happened repeatedly to Plaintiff TINIUS.

22.    Plaintiff JACKI FITZGERALD is currently homeless, along with her husband. She is 46 years old. She has been homeless, and impoverished, since the age of 23.  She was assaulted in a shelter as a young woman in Seattle and is afraid to stay in shelters. She also has a

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

dog as a watchdog and pets are not allowed in emergency shelters in Sacramento. Nor are there adequate shelter spaces for married couples.

23.     In or about January 2007, Defendant SACRAMENTO POLICE OFFICERS DOES 1-20 cited Plaintiff FITZGERALD and her husband for illegal camping when she was sleeping in an alley off North Tenth Street. She was required to do community service as a result of the citation.

24.     In or about October 2006, Defendant SACRAMENTO COUNTY PARK RANGERS DOES 21-40 cited Plaintiff FITZGERALD for illegal camping and illegal storage of personal property on the American River Parkway.

25.     In or about late 2005, or early 2006, Defendant SACRAMENTO COUNTY PARK RANGER DOES 21-40 cited Plaintiff FITZGERALD for camping because she and her husband were sleeping under Interstate Highway 5 along the American River Parkway. The COUNTY work crew confiscated and destroyed, without notice or opportunity to reclaim, the tent, sleeping bags, backpacks, clothes, personal hygiene items, books, and everything else she had. She and her husband found some of the property which had been thrown into a dumpster on the parkway, along with the personal property of other homeless persons.

26.     Plaintiff JEREMY MCENTYRE is currently homeless. He is 37 years old. He first became homeless in 1991, when drug use led to losing his job and apartment. He is a construction worker, but without a car it is difficult for him to obtain work. He has lived in various shelters, including the Salvation Army, the Volunteers of America Shelter, and the Clean and Sober New Start Shelter, but "timed out" of them in early 2007.

27.     On March 17, 2007, before 7 a.m., Plaintiff MCENTYRE was awakened and cited for illegal camping by Defendant SACRAMENTO POLICE OFFICERS COOPER and ZOULAS when he was sleeping in an empty field near the Union Gospel Mission at 400 Bannon Street in Sacramento. He was then taken into custody on pending warrants.

28.     Plaintiff TAMMY JONES became intermittently homeless in July 2006, and is currently renting an apartment. She is 36 years old. She and her husband have earned money by waving street signs for various businesses. Currently, she has a job at the Salvation Army shelter

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

for $7.50 per hour. Her paycheck goes to pay rent and she depends on LOAVES & FISHES for food. She stayed in shelters from October 2005, until February 2006, but had to leave since she exhausted the limits for staying.

29.     On February 25, 2007, Plaintiff JONES was cited for illegal camping at Bannon and North B Streets in Sacramento. At 5:30 a.m. that morning Defendants SACRAMENTO POLICE OFFICERS COOPER and ZOULAS awakened Plaintiff and others who were sleeping at that location and told them that they could not stay there. Plaintiff JONES asked where she could stay. One of the officers told her, along with others, to move above the railway track at Bannon Street. Plaintiff JONES moved to the area indicated but on March 5 Defendants SACRAMENTO POLICE OFFICERS COOPER and ZOULAS returned and told her that she would be arrested if she did not leave the place and that all her stuff would be taken.

30.     Plaintiff MICHAEL MOORE is currently living in a residential drug and alcohol program. He is 55 years old. He first became homeless in 1989, and has been homeless about one third of the time since that year. He has stayed in various shelters in Sacramento. both at the Salvation Army and the overflow shelter at Cal Expo. He was expelled from Clean & Sober when he went off his medications and stayed out all night.  Thereafter he camped out occasionally in the American River Parkway and the rail yard near 7th and Ahern.

31.     In or about June or July 2006, Plaintiff MOORE was cited for illegal camping by Defendants SACRAMENTO POLICE OFFICERS COOPER and ZOULAS.

32.     In April of 2006, when Plaintiff MOORE was sleeping in a tent at the American River levee near 10th and Vine Streets in Sacramento, his property, including a large tent, a pup tent, blankets, clothes, food, books and a battery were confiscated and destroyed by or under the direction of Defendant SACRAMENTO COUNTY PARK RANGERS DOES 21-40 without notice to Plaintiff MOORE or the opportunity to reclaim such property. His property was thrown into the back of a COUNTY truck, mixed with the belongings of other homeless people, and driven away.

33.     Plaintiff LINDSEY ALESSO, who is 36 years old, is currently living at the Bridges Transitional Housing for women recovering from drug addiction, although her eligibility

-10-

to stay there will soon expire and she will again be on the streets if she cannot find other housing. She has been homeless 90% of the time since 2000, when her husband died and she had to leave the home owned by his family. She has stayed in the Salvation Army shelter, which is Christian based.

34.     Plaintiff ALESSO has had all of her possessions seized and dumped by Defendants without notice, on several occasions; the first time was in 2004, when she was camping near the 16th Street bridge over the American River.  She was awakened at 8:00 a.m. by work project crew under the direction of Defendant SACRAMENTO COUNTY PARK RANGERS DOES 21-40 who threw her stuff into a COUNTY truck and told her "not to interfere" when she tried to recover her shoes, coats, basic hygiene necessities and clothes.

35.     On September 12, 2006, she returned to her campsite on the American River at a location known as "Gay Bay" (between North 7th and North 9th Streets) to find a COUNTY work crew and Defendant SACRAMENTO COUNTY PARK RANGERS DOES 21-40 cleaning up her campsite.  She saw some of her belongings, including her feather comforter, in the back of a COUNTY truck but was told she could not get it back – "It's gone now."  Later that day, she saw one of the COUNTY work crew wearing an orange vest with her walkman, carrying her CD's.  He refused to return it when she asked for it.

36.     Plaintiff VALERIE DUFOUR was homeless about 75% percent of the time between September 2004 and April 2007. She is 52 years old. She has spina bifida which causes numbness in her lower extremities, hearing loss, and hypothyroidism. She has a monthly income of $206 from General Assistance for a limited period of three (3) months per year, and $150 in food stamps.  In the winter of 2006-2007 she stayed one night at the Salvation Army homeless center, and one night at the winter shelter operated by Sacramento County at Cal Expo. She does not feel safe in the shelters after her property was stolen while she slept.

37.     In the summer of 2006, at 6 a.m., Plaintiff DUFOUR was cited by Defendant SACRAMENTO POLICE OFFICERS DOES 1-20 for trespassing while sleeping in a business parking lot where she, along with other homeless people, had permission to stay as long as they were gone before the business opened. She had come to this location because on that night

-11-

Defendant SACRAMENTO POLICE OFFICER DOES 1-20 woke her up while sleeping on the steps of St. John's Church at 17th and L Streets and told her to move, even though she had permission from the church to spend the night at that location. This ticket was later dismissed.

38.     Plaintiff RONALD HICKS has been  homeless since March 2007. He is 56 years old. He is disabled and has been intermittently employed, but does not have enough income to rent permanent housing. Plaintiff HICKS depends upon emergency shelters in Sacramento for housing, but cannot avoid sleeping outside because of the time limitations on consecutive nights. He has stayed at the Salvation Army Shelter, the winter shelter at Cal Expo, which only operates until the end of March, and the Union Gospel Mission. He has been forced to sleep outside along the American River when unable to qualify for emergency housing.

39.     On March 22, 2007, at 9:30 a.m. Plaintiff HICKS was cited by the SACRAMENTO COUNTY PARK RANGERS DOES 21-40 for unlawful camping along the American River, on the South side approximately one mile from the confluence with the Sacramento River. At the time, he was waiting for his sleeping bag to dry, because it had rained the night before. He was sentenced to do fifteen (15) hours of community service.

40.     With respect to the acts described above pertaining to each individual Plaintiff, employees of the CITY and COUNTY, whose names and departments are unknown, were involved and responsible in part for such acts. These individuals are sued herein as ROES 1-20.

41.     Plaintiff LOAVES & FISHES is a non profit charity in Sacramento, California whose stated mission is to feed the hungry and shelter the homeless.  Open on a daily basis, LOAVES & FISHES provides welcome, safety, and cleanliness for homeless men, women and children seeking survival services, providing food alone for as many as 1,000 people each day. These services provided by LOAVES & FISHES include providing clothing, blankets, and other personal necessities for individuals who are homeless, its patrons.

42.     Plaintiff LOAVES & FISHES is directly affected by the Defendants' current practice of citing and/or arresting individuals for unlawful camping, as LOAVES & FISHES' particular services such as Jail Visitation and/or the Tommy Clinkenbeard Legal Clinic are often needed by such individuals as a result of this current practice.  Further, LOAVES & FISHES is

-12-

directly affected by the confiscation and destruction of personal property of its patrons, as it is continually a source of such crucial supplies as needed by its patrons. Therefore, LOAVES & FISHES, as an organization, is immediately affected by the law enforcement practices challenged in the instant lawsuit, and LOAVES & FISHES' patrons are also members of the class of Plaintiffs named in this Complaint.

43. Plaintiff FRANCIS HOUSE, a non-profit organization in Sacramento, California, supported by seventeen (17) churches and the community at large, provides resources and counseling services to the poor from its facility at 1422 C Street, Sacramento. The counseling and services vary from making referrals to a food closet, providing motel vouchers to more complex services such as advocating for clients in the welfare system. Many of the patrons of FRANCIS HOUSE are homeless.

44. Plaintiff FRANCIS HOUSE is directly affected by the current practice of citing and/or arresting individuals for unlawful camping, as FRANCIS HOUSE's particular services of counseling and advocacy are often needed by such individuals as a result of these current practices. Further, FRANCIS HOUSE is directly affected by the confiscation and destruction of personal property of its patrons, as it is continually a source of such crucial supplies when they are needed. Therefore, FRANCIS HOUSE, as an organization, has been significantly impacted by the law enforcement practices challenged in this lawsuit. Persons who receive services at FRANCIS HOUSE are members of the class of plaintiffs identified in this Complaint.

45. Plaintiff SACRAMENTO HOMELESS ORGANIZING COMMITTEE (SHOC) is an unincorporated association of homeless and formerly homeless people, and their supporters, whose mission is to advocate for and defend the rights of homeless people. SHOC'S members, and the homeless people it represents, are being impacted by the law enforcement policies and customs alleged in this lawsuit, and the SHOC office is often visited by individuals seeking help and advice because they have lost their belongings and/or been cited for sleeping outside, using the time and services of its volunteer staff, and diverting it from pursuing its advocacy functions, which include publication and distribution of the homeless newspaper, "Homeward".

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

46.　　　Defendant CITY OF SACRAMENTO is a Municipal Entity under the laws of the state of California, with the capacity to sue and be sued. The CITY is the legal and political governmental entity responsible for the actions of the Sacramento Police Department, its officials, agents and employees.  The CITY is sued in its own right and on the basis the acts of its officials, agents and employees.

47.　　　Defendant ALBERT NAJERA is the CHIEF OF POLICE OF THE SACRAMENTO POLICE DEPARTMENT (hereinafter "SPD").  He is the official within the SPD responsible for the administration and operation of the SPD.  The policies complained of herein are enforced pursuant to the direction of CHIEF NAJERA, and in accordance with its custom and policy.  He is sued in his individual and official capacity. All these acts were pursuant to the custom and practice of the CITY and CITY POLICE CHIEF ALBERT NAJERA

48.　　　Defendants CITY OF SACRAMENTO POLICE OFFICERS MIKE COOPER and MARK ZOULAS are responsible for issuance of most of the CITY citations complained of herein, who act singly, together and with other CITY POLICE OFFICERS whose names and identities are not now known and are sued herein by these fictitious names, CITY POLICE OFFICER DOES 1-20.

49.　　　The COUNTY OF SACRAMENTO is, and at all material times referred to herein, was a division of the state of California.  Plaintiffs' allegations against the COUNTY are based on acts and omissions of the SACRAMENTO COUNTY PARK RANGERS and SACRAMENTO COUNTY SHERIFF'S DEPARTMENT employees, including those whose names and identities are not now known and are sued herein by these fictitious names, SACRAMENTO COUNTY PARK RANGER DOES 21-40.

50.　　　Defendant SHERIFF JOHN MCGINNESS is the SHERIFF of the COUNTY OF SACRAMENTO.  He is the official responsible for the administration and operation of the COUNTY SHERIFF'S DEPARTMENT. The policies complained of herein are enforced pursuant to the direction of SHERIFF JOHN MCGINNESS and in accordance with its custom and policy.  He is sued in his individual and official capacity. All these acts were pursuant to the custom and practice of the COUNTY and SHERIFF JOHN MCGINNESS.

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

51.     Defendants SACRAMENTO COUNTY PARK RANGERS ANDERSON, BARNETT and MCELHENY are principally responsible for seizing and disposing of the personal property, as complained of herein, and, have acted, and will act together with each of the other Defendants and with persons whose names and identities are not now known and are sued by their fictitious names, SACRAMENTO COUNTY PARK RANGERS DOES 21-40.

52.     The names of Defendants sued herein by their fictitious names, SACRAMENTO POLICE OFFICER DOES 1-20, SACRAMENTO COUNTY PARK RANGER DOES 21-40, and ROES 1-20, are unknown to Plaintiffs. Such Defendants, according to Plaintiffs' information and belief, are agents and/or employees, of each of the other Defendants, all of whom have worked in concert to deprive Plaintiffs of their constitutional rights as alleged herein. Plaintiffs pray for leave to amend this Complaint to insert the actual names of these fictitiously named Defendants when the same are ascertained.

## CLASS ALLEGATIONS

53.     Plaintiffs seek to have a class certified under Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

54.     Class One is defined as the class of all persons who (a) are, or will be homeless in that they are, or will be, without fixed nighttime shelter because they  lack the financial resources or have other problems that prevent them from being able to provide for their own food, shelter and other essentials; (b) reside within the CITY and COUNTY of SACRAMENTO; and (c) were cited or will be cited under the CITY and COUNTY ordinances applied to the class pursuant to the CITY and COUNTY policies, practices or customs of enforcement challenged by this action.

55.     Class Two  is defined as the class of all homeless persons, including those described herein above in Paragraph 57, who have had their property confiscated and/or destroyed without notice, or adequate notice, or opportunity to reclaim such property pursuant to the CITY and COUNTY policies, practices or customs of enforcement challenged by this action.

\\\

\\\

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

56.     The class is so numerous that joinder of all members is impractical.  Plaintiffs believe that hundreds of people have been or will be subjected to Defendants' unlawful policies, practices and customs.  There are questions of law and fact common to all members of the class. The claims of the representative parties are typical of the claims of the class members.  The representative parties will fairly and adequately represent the interests of the class.

57.     Defendants' policies or practices will affect all members of the classes in the same way, thereby making injunctive and declaratory relief appropriate to the class as a whole. The common questions of law to be determined with respect to Class One are whether Defendants' policies, practices and customs of subjecting the homeless to citation for sleeping outdoors, and/or for possessing the survival gear necessary for sleep during the night hours, when there is no available alternative shelter, day or night, violates the rights of class members under the Eighth and Fourteenth Amendments to the United States Constitution.  These questions of law are common to all members of the class and predominate over any question affecting individual class members.

58.     The common questions of law to be determined with respect to Class Two are whether Defendants' policies, practices and customs of confiscating and destroying the property of the class without notice, or adequate notice, or opportunity to reclaim such property, violates the rights of the class under the Fourth and Fourteenth Amendments of the U.S. Constitution. These questions of law are common to all members of the class and predominate over any question affecting individual class members.

59.     The class representatives know of no conflict of interest among class members. Plaintiffs are represented by the attorneys shown on the caption page of this complaint,  Mark E. Merin and Cathleen A. Williams, who are experienced civil rights attorneys who can vigorously prosecute this action.

## FACTS CONCERNING DEFENDANTS' POLICIES AND PRACTICES

60.     Under section 12.52 of the Sacramento Municipal Code, it is unlawful to "camp" on any public or private property.  As defined in 12.52.020, "camp" means to place, pitch, or occupy camp facilities; to live temporarily in a camp facility or outdoors; to use camp

-16-

paraphernalia, which includes sleeping gear, cooking facilities and similar equipment.  Section 12.52.030 prohibits "all unlawful camping" with certain limited one-night exceptions as permitted by the owner of the property for "not more than one consecutive night".  Additionally, under Section 12.52.040 it is unlawful to store personal property, including camp paraphernalia, on any public property or private property without the written consent of the owner.  A violation of these sections is an infraction or misdemeanor.

61.     These sections, as well as California Penal Code 647 (j) (unlawful lodging/camping) are being aggressively and selectively enforced by both the CITY and COUNTY and the named individual Defendants, as well as the DOES 1-40 and ROES 1-20, against Plaintiffs, as described herein, leading to their citation, and arrest or threatened arrest  for sleeping outside, even though they cannot find housing and shelter, and to the confiscation of their property without notice or opportunity to reclaim, even though they must use and keep their possessions to survive and to live outside.

62.     Pursuant to the policy and practices of Defendants, and each of them, homeless people cited for Code violations are punished with fines and community service and, if not paid or served, become subject to arrest for failure to appear in Court, which leads to time in jail.

63.     The above described actions by Defendants, and each of them, have caused and unless preliminarily and permanently enjoined will continue to cause great humiliation, psychological, physical and emotional suffering, degradation, pain, and injury, financial loss, and loss of liberty and privacy to Plaintiffs and the class they represent.

## FIRST CLAIM

(Cruel and Unusual Punishment in Violation of the Eighth Amendment to the U.S. Constitution on Behalf of Plaintiffs and the Members of the Class)

64.     Plaintiffs realleges and incorporate the allegations of the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

65.     Forces beyond Plaintiffs' control, such as unemployment, poverty, and the failure of Defendants to provide alternatives, including but not limited to those which may be

mandated by law, have compelled Plaintiffs and others to live and sleep outside in public on public property.

66.     Sleeping is necessary to the maintenance of life.  It constitutes an involuntary manifestation of the Plaintiffs' status as homeless.  Plaintiffs and the members of the class may not avoid or do without sleep.

67.     The Defendants' pattern of citing and threatening to arrest involuntarily homeless individuals such as Plaintiffs for illegal camping and other offenses when they are sleeping outdoors, is performed under color of state law by the Defendants, who are state actors, and constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief, for themselves and for all persons similarly situated, as hereunder appears.

### SECOND CLAIM

(Denial of Constitutional Right Against Unreasonable Search and Seizure in
Violation of The Fourth and Fourteenth Amendment to the U.S. Constitution on
Behalf of Plaintiffs and the Members of the Class)

68.     Plaintiffs realleges and incorporate the allegations of the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

69.     Defendants above described policies, practices and conduct of confiscating Plaintiffs' property without notice violates Plaintiffs' right to due process of law under the Fourteenth Amendment, and to privacy and liberty under the Fourth Amendment, of the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for relief, for themselves and for all persons similarly situated, as hereunder appears.

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

## THIRD CLAIM

(Denial of Constitutional Right to Equal Protection of the Laws in Violation of The Fourteenth Amendment to the U.S. Constitution on Behalf of Plaintiffs and the Members of the Class)

70.     Plaintiffs realleges and incorporate the allegations of the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

71.     Defendants' above-described policies, practices and conduct are intended and designed to single out homeless people and has the purpose and effect of depriving homeless people of their property in the CITY and COUNTY Of SACRAMENTO.  These policies and actions are based on Defendants' animus towards this disfavored group and lacks a rational relationship to any legitimate state interest.  In adopting and implementing these policies and practices with intent to harm and disadvantage homeless persons in the CITY and COUNTY OF SACRAMENTO, the Defendants have violated the equal protection clause of the U.S. Constitution and 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for relief, for themselves and for all persons similarly situated, as hereunder appears.

## PRAYER

WHEREFORE, Plaintiffs seek relief from this Court as follows:

1.     For an order certifying the proposed Plaintiff classes together with any necessary and appropriate sub-classes under Federal Rule of Civil Procedure 23;

2.     For a temporary restraining order and/or preliminary injunction and permanent injunction enjoining and restraining Defendants from continuing or repeating the unlawful policies, practices and conduct complained of herein;

3.     For declaratory judgment that Defendants' policies, practices and conduct as alleged herein were/are in violation of Plaintiffs' rights under the United States Constitution;

4.     For the return of Plaintiffs' property;

5.     For damages in an amount according to proof, but in no event less than $4,000 per incident under California Civil Code § 52.1 and California Government Code § 815.6;

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

6.     For attorney's fees as provided by law;

8.     For costs of suit; and

9.     For such other and further relief as the Court may deem just and proper.

DATED: August 31, 2007              Respectfully submitted,

LAW OFFICE OF MARK E. MERIN


/s/ - "Mark E. Merin"
BY:
Mark E. Merin
Attorney for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH

1

**DEMAND FOR A JURY TRIAL**

2         A JURY TRIAL IS DEMANDED on behalf of Plaintiff, and all those he seeks to

3    represent.

4    DATED:   8/31/2007          Respectfully submitted,

5                                          LAW OFFICE OF MARK E. MERIN

6

7

8                                    /s/ - "Mark E. Merin"
                              BY:
9                             Mark E. Merin
                              Attorney for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. # 2:07-CV-01565 MCE GGH