1  Mark E. Merin, Esq. SBN 043849
   Cathleen A. Williams, Esq. SBN 068029
2  LAW OFFICE OF MARK E. MERIN
   2001 P Street, Suite 100
3  Sacramento, CA 95814
   Telephone:  (916) 443-6911
4  Facsimile:  (916) 447-8336

5  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY LEHR, et al., | ) | Case No.:  2:07-CV-01565 MCE GGH |
| Plaintiffs, | ) | |
| v. | ) | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF SACRAMENTO, et al., | ) | |
| Defendants. | ) | |
| | ) | Date:        June 11, 2009 |
| | ) | Time:        2:00 p.m. |
| | ) | Courtroom: 7 |
| | ) | Judge:       Morrison C. England, Jr. |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
Anthony Lehr, et al. vs. City of Sacramento, et al.; USDC-East. Dist. #2:07-CV-01565 MCE GGH

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE DISTRUCTION OF CONNIE HOPSON'S AND OTHER PUTATIVE CLASS MEMBERS' PROPERTY HAS NO RATIONAL BASIS AND THEREFORE VIOLATES THE EQUAL PROTECTION CLAUSE AS ALLEGED IN THE THIRD CLAIM OF THE FIRST AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.  IT IS A VIOLATION OF THE EQUAL PROTECTION CLAUSE TO SINGLE OUT A CLASS OF CITIZENS FOR INVIDIOUS DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    II.    PLAINTIFFS AND DEFENDANTS WAIVED THE PROCEDURE FOR INITIAL DISCLOSURE AND THEREFORE THERE IS NO REASON TO SANCTION PLAINTIFFS FOR FAILURE TO SUPPLEMENT THEIR INITIAL DISCLOSURE . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

-i-

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

*Anthony Lehr et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

# TABLE OF AUTHORITIES

## CASES

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432, 439 (1985) ......................................................................................... 7, 8, 9, 10

*J.W. v. City of Tacoma*
720 F.2d 1126 (9th Cir 1983) ................................................................................................ 9

*Merrifield v. Lockyer*
547 F. 3d 978, 986. (9th Cir 2008) ....................................................................................... 8

*Romer v. Evans,*
517 U.S. 620, 627, 634 (1996) .............................................................................................. 7

*Wayte v. United States*
470 U.S. 598, 610 (1985) .................................................................................................... 10

*Yaodi Hu v. Park National Bank*
2009 Lexis 9992 (May 7, 2009) .......................................................................................... 12

## STATUTES

Fed. Rule of Civ. Pro. 26(e)(1)(A) ................................................................................ 10, 13

## INTRODUCTION

Defendant City of Sacramento's ("City's") Motion for Summary Judgment/Adjudication seeks the dismissal of the Third Claim stated in the First Amended Complaint in this action on the grounds that the City's camping ordinances have a rational basis in City policy and therefore do not violate the Equal Protection Clause. (Defendants' Points and Authorities In Support of Motion, pp 4-5.)

In view of the fact that the Court has already granted Summary Judgment to Defendants on the claim that the camping ordinances are unconstitutional under the Eighth Amendment, Plaintiffs do not here contend that the enforcement of the anti-camping ordinances against homeless people violates the Equal Protection Clause. (See, Order and Memorandum, 5/20/09, p.37.) And in view of the fact that this Court has already found that the organizational plaintiffs (Sacramento Homeless Organizing Committee, Loaves & Fishes, and Francis House) lack standing, or are otherwise not qualified to be Plaintiffs, Plaintffs do not here contend that they should remain Plaintiffs.

These considerations, however, do not militate in favor of the Court granting Defendants' Motion for Summary Adjudication, for Defendants have not addressed the basis of the violation of Equal Protection Clause as it is stated in the Third Claim of the First Amended Complaint. This claim incorporates the averments of the preceding paragraphs of the First Amended Complaint. First Amended Complaint (hereinafter FAC) paragraph 70. The gravamen of the equal protection claim is set forth as follows:

> Defendants above-described policies, practices, and conduct are intended and designed to single out homeless people and has [sic] the purpose and effect of depriving homeless people of their property in the CITY and COUNTY of SACRAMENTO. These policies and actions are based upon Defendants' animus toward this disfavored group and lacks a rational relationship to any legitimate state interest. In adopting these policies and practices with intent to harm and disadvantage homeless persons in the CITY and COUNTY OF

-1-

          SACRAMENTO, the Defendants have violated the Equal Protection Clause of the U.S. Constitution and 42 USC Section 1983. FAC Paragraph 71.

As these averments demonstrate, the Equal Protection violation stated in Plaintiffs' Third Claim of the First Amended Complaint is based upon the "policies, practices, and conduct…that have the purpose and effect of *depriving homeless people of their property."* Accordingly, Plaintiffs' Equal Protection claim includes the "policies, practices, and conduct" of "*confiscating Plaintiffs' property without notice*" as averred in the Second Claim of the First Amended Complaint (FAC 68-69.)

As to this aspect of the Third Claim, Defendants' Motion should be denied. Assuming that rational basis review is appropriate with regard to the City's custom and practice of destroying Plaintiff Hopson's and the putative class members' property, in order to evaluate whether it violates the Equal Protection Clause, Defendants have cited no facts which demonstrate that there is a rational relationship between the City's legitimate interests in maintaining parks and streets and the destruction, as opposed to storage, of the property of homeless persons. Nor could they do so. Since the City's objective is to *remove* the property from the locations where it has been stored by homeless persons, this objective can be met by simply following the established procedures for preservation of found or abandoned property, rather than its immediate destruction.

Under Rule 56, as this Court stated in its previous ruling, it is Plaintiffs' burden, as the party opposing summary judgment, to show there is "a genuine dispute" as to the facts material to the Third Claim in the Second Amended Complaint, upon which "a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." At this stage, the evidence presented by plaintiffs "is to be believed, and all reasonable inferences that may be drawn" from Plaintiffs' evidence must be made in Plaintiffs' favor. (Memorandum and Order, filed 5/20/09, pp. 11-13.)  This Court has already ruled that the City had a custom and practice of

-2-

destroying the property of homeless people in denying Defendants' previous Motion for Summary Adjudication of this issue. This Motion should be similarly denied. (See, Order and Memorandum, 5/20/09, pp. 37-39.)

## STATEMENT OF FACTS[1]

The City's practice of seizure, destruction, disposal, and failure to store the property of homeless people displays a custom of extreme disregard for the property rights of its homeless residents. Property is seized and destroyed by the City Police, or under their direction, or by the City Park Rangers, if left unattended for varying periods of time, from a couple of hours to an average of 48 hours in campsites. SSF Facts No. 14-30.

Officer Zoulas, one of the officers appointed by the City to deal with the issue of homelessness, has himself engaged in this practice. SSF Fact No. 36, 53. Sometimes property is seized and destroyed, or wrecked, when the person is cited or told to leave. SSF 31-43. After "clean-ups" of campsites are announced at Loaves & Fishes at the request of Officer Zoulas, "clean-ups" which Officer Zoulas admits have caused homeless people to lose their property, Plaintiffs Loaves & Fishes and Francis House experience a surge of requests for replacement equipment and ID's. SSF 44-52.

Significantly, the notice sometimes left on unattended property of homeless individuals by both the Police Department and the City Parks Department explicitly states that "this location is scheduled for immediate clean-up by the Sacramento Police Department. Any items not removed *will be considered abandoned and disposed of accordingly.*" SSF Fact No. 10-11. [emphasis added]. As Chief Ranger Narramore revealed, this is not the ordinary procedure used for abandoned property left by unidentified persons. When property is found and the owner cannot be identified, the Sacramento Police Department and Parks Department policy is to take custody of and inventory the property. SSF 13. Chief Ranger Narramore has never taken custody of or

---

[1] This Statement of Facts recounts the facts which Plaintiffs advanced in opposing Defendant City's first Motion for Summary Judgment, which sought the dismissal of the Second Claim of the First Amended Complaint. As noted above, In its order of May 20, 2009, the court denied the City's Motion on the ground that there were disputed facts with respect to this claim.

-3-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

1   inventoried camping equipment from a homeless campsite. SSF Fact No. 28-30.

2       The practice of disposing of the property of homeless people is so widespread that Officer Zoulas, when questioned about the disposal of homeless property, responded in frustration that "that's my job." SSF Fact No. 53. He also freely acknowledged that, on occasion, the Sacramento Police throw away property left by homeless campers, and that once homeless campers have been required to leave a campsite, their property may be disposed of as abandoned if they leave it behind. He has seen instances where property people wanted was thrown away. SSF Fact No. 16-19.

    Plaintiff has produced evidence of the seizure and disposal of homeless property on many occasions. Along Bannon Street in the City of Sacramento, in the area where homeless people congregate for the night, the property of homeless people is seized and destroyed by the Volunteers of America, a non-profit organization, under the direct supervision and direction of the City Police. Any property left at a site by homeless people, and any property that they are unable to move on short notice, is collected and dumped in a garbage truck, dumpster, or similar receptacle. The person who witnessed this, Larry Cloyd, saw the disposal of property belonging to some thirty homeless people at a time, on six different occasions, at a location across from Union Gospel Mission on Bannon Street, over the past few years. SSF Fact No. 31-34.

    In 2006, Putative Class Representative Plaintiff Connie Hopson had property taken by the City Police, during the time she was camping near 15th and C Streets in the City of Sacramento. During the day, she, and the four other women staying there, carried all their belongings up to the hill by the tracks and hid them there. One afternoon, City police "swooped in" and one of them went up the hill and pulled their belonging down. Connie Hopson and the other women were told to get what they could and leave. She couldn't carry anything but a few blankets; the police took all of the other property, and dumped it all in a big trailer they pulled on the back of a truck. Nothing was bagged or labeled; she was not informed where she could retrieve her property. They took everything she owned: medication, clothes, cell phone, bible, pictures. SSF Fact No. 35.

    In mid-June, 2008, Gumercindo Camejo Jr. was sleeping on Bannon Street near the Union

-4-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

1  Gospel Mission. He left his property with the property of other homeless people, went to Loaves &
2  Fishes, and when he got back in the evening all his property was gone. There was a dumpster and
3  police cars parked around the dumpster. The property taken was his sleeping bags, shoes, t-shirts,
4  blanket, walkman, watch, backpack, bracelet, and red "monkey" jeans. SSF Fact No. 37.

5       In August or September, 2007, at an alley off North B Street, Christine Lawrence had her
6  property, including sleeping bag, blanket, personal hygiene items, ID, clothes, coats, shoes, taken
7  after verbal notice of a clean-up by Sacramento Police Officers Cooper and Zoulas without any
8  date certain. She was in the process of moving. When she went back to the alley, the police officer
9  in the paddy wagon would not allow her back into the alley to recover the rest of her property. It
10 was taken. SSF Fact No. 38.

11      In February of 2006, Marinthian Hunt had property taken from Ahern Street between North
12 B and North C Streets. She left briefly to visit the Salvation army. She packed her sleeping bags
13 and placed her clothes in boxes. She received no notice that property on the sidewalk would be
14 confiscated. As she was walking back to the site, she saw police officers Mark Zoulas and Mike
15 Cooper driving toward her in their SUV. When they pulled over to talk to her, she could see her
16 property in the back of the vehicle. They said they would give it back but they never did. They did
17 not tell her that it would be stored somewhere she could reclaim it. She never saw her property
18 again. SSF Fact No. 36.

19      On July 8, 2008, Warren Wilson was cited for camping near the Union Gospel Mission. As
20 he was being taken away in a police car, the "police had VOA take his stuff." SSF Fact No. 39.

21      On October 27, 2008, Ralf Junior Plunkett had his property taken by Sacramento Police
22 Officer Gish (Officer Gish #707) and another officer when he was cited for unlawful camping near
23 the American River and Canterbury Road. The two officers "pulled tent down hill tearing it while
24 dragging down hill. Tent was unusable. Thereafter also damaged cooking stove and ruined food."
25 SSF Fact No. 40.

26      On May 27, 2007, and in 2008, James Little had his property taken and destroyed by the
27 City police after he was ordered to leave the area near the railroad tracks that cross 7th Street. He
28

-5-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

filed government claims against the City and as a result was reimbursed by the City on two occasions. SSF Fact No. 41.

In April 2008, by 12th and C street, Rhonda Wilson had her property, including jacket, pants, underwear, and hospital paperwork, taken by two police who said that she couldn't stay there. SSF Fact No. 42.

In 2007, Antoinette Chitwood had property, including camping equipment, food, medication, taken by the Sacramento Police near 15th and C. She saw that when they were leaving they had taken her "whole basket" – everything. SSF Fact No. 43.

Officer Zoulas, along with his partner, Officer Cooper, who has been specially assigned by the City to deal with the issues posed by homeless residents, such as camping, sleeping, or storing possessions on public property, can generally distinguish people who are homeless because they carry possessions (and the kind of possessions they carry); because they are personally known to him to be homeless; and because of their "down-trodden appearance." SSF 8.  He can also recognize the property of homeless people when it is stored outside. SSF 8.  According to Officer Zoulas, the City Police Department policy, as implemented by himself and his partner, "is to keep [homeless] people circulating" through the City. (SSF 9)

## ARGUMENT

**I.     THE DISTRUCTION OF CONNIE HOPSON'S AND OTHER PUTATIVE CLASS MEMBERS' PROPERTY HAS NO RATIONAL BASIS AND THEREFORE VIOLATES THE EQUAL PROTECTION CLAUSE AS ALLEGED IN THE THIRD CLAIM OF THE FIRST AMENDED COMPLAINT**

### A.     INTRODUCTION

This Court has already denied the City's First Motion for Summary Judgment/Adjudication, as noted above, with respect to the Second Claim stated in the First Amended Complaint, which avers that the City violated the rights of Plaintiff Connie Hopson and the members of the putative class under the Fourth and Fourteenth Amendments by the confiscating her property without notice. Plaintiff Connie Hopson is the putative Representative

-6-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

Plaintiff named in the Motion for Class Certification filed in this action by plaintiffs and presently pending before the Court. SSF 2.

The Equal Protection violation as alleged in the Third Claim of the First Amended Complaint is based upon the City's pattern and practice of singling out homeless persons as a class and developing special procedures for destroying property belonging to such persons, a procedure which it does not follow for other found or abandoned property, which is booked and stored presumably in compliance with state law.[2] SSF 10-15. These special procedures are discriminatory and lack any rational basis. The City's presumed objective – cleanliness of areas where homeless people have placed or left property – can be served by following the statutory procedure for the storing of abandoned property, rather than its destruction.

### B. IT IS A VIOLATION OF THE EQUAL PROTECTION CLAUSE TO SINGLE OUT A CLASS OF CITIZENS FOR INVIDIOUS DISCRIMINATION

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Even under rational basis review, the Supreme Court has struck down laws where a discrete group of citizens are "put in a solitary class" and there is "no reasonable relation between the classification adopted and the object to be attained." *Romer v. Evans,* 517 U.S. 620, 627, 634 (1996) [overturning law that singled out homosexuals because it "raise[d] the inevitable inference that the disadvantage imposed is born of animosity toward the

---

[2] California Civil Code Section 2080 requires that any person who takes charge of lost property become responsible for that property, with all "the obligations of a depository for hire." These obligations include the duty to "use at least ordinary care for the preservation of the thing deposited." California Civil Code Section 1852. Section 2080.1 further requires persons and public entities that take possession of personal property to restore them to their rightful owners, if known. If the owner is unknown, any property worth more than $100 must be turned over to the police. Section 2080.1(b). The police must then maintain the property for at least 90 days and return it if the owner appears and requests it. 2080.2; see 2080.6(a).

-7-

class of persons affected."]; *City of Cleburne, supra,* 473 U.S. at 439 [striking down permit requirement that applied only to homes for mentally retarded people.] In short, government laws and policies "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne, supra,* 473 U.S. at 446.

Defendant has not adduced any *evidence* that the destruction of property belonging to homeless people serves any legitimate government interest. However, assuming the basis of the practice is park or street maintenance, it appears clear that the destruction of such property, as opposed to storage, is not rational approach to achieving such goals. To seize such property because it was owned or left by a homeless person – but only because it was associated with a homeless person – is both arbitrary and irrational.

In considering challenges under the Equal Protection Clause to governmental classifications, the Ninth Circuit has repeatedly recognized that the analysis involves two aspects. *Merrifield v. Lockyer* 547 F. 3d 978, 986. (9th Cir 2008). First, the interest asserted by the government must be legitimate. Secondly, the means employed to further or protect that interest must be *related* to that interest, rather than being based on some arbitrary distinction, stereotype, stigma, or economic animus.

Of course, the City can hardly contend that it has a legitimate interest in destroying the property of homeless people in order to make the City an undesirable place to live for such residents. The only legitimate health and safety interest which can be asserted by the City is its interest in keeping parks and streets clean. But with respect to this objective, its practice of *destruction* of property fails the second aspect of the test.

In *Merrifield, supra,* the court struck down legislation that exempted some pest control businesses from licensure, but denied the exemption to three others, finding that "the irrational singling out of three types of vertebrate pests from all other vertebrate animals was designed to favor economically certain constituents at the expense of others similarly situated…Although economic rights are at take, we are not basing our decision today on our personal approach to

-8-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

economics, but on the Equal Protection Clause's requirement that similarly situated persons must be treated equally." 547 F.3d at 991-992. The Court noted that "the singling out of a particular economic group, with no rational or logical reason for doing so, was *strong evidence* of an economic animus with no relation to public health, morals or safety." 547 F.3d at 989. [emphasis added.] Accordingly, the Court invalidated the partial exemption provision of the licensing statute as a violation of the Equal Protection Clause

In *J.W. v. City of Tacoma* 720 F.2d 1126 (9th Cir 1983) a group home use permit was denied to an applicant by the City because of public opposition to the residence of former mental patients in the group home. The court found that the denial of the permit may have resulted from "inaccurate and stereotypic fears" about the group, and found an equal protection violation. Similarly, in *City of Cleburne v. Cleburne Living Ctr. Inc, supra* 473 U.S. at 439 the Supreme Court struck down a zoning law that banned group homes for the mentally retarded, emphasizing that where a discrete group of citizens are "put in a solitary class" the reasonable "relation between the classification adopted and the object to be obtained" is questionable. *City of Cleburne, supra,* 473 U.S. 439.

There is a factual dispute in this case regarding the clean-up practices of the city. Plaintiffs contend that the policies for clean-ups of homeless property were discriminatory, such that their property was "put in a solitary class" and destroyed, rather than stored. The City did not follow its policy of storing abandoned property with regard to property found at campsites or at other locations which were associated with homeless people. SSF 10-15; 20-30. Instead, both the City Parks Department, and the City Police Department, posted a notice on property associated with homeless people, warning that any "abandoned" property would be disposed of. SSF 11, 20-30; (See also this Court's Memorandum and Order, filed 5/20/09, p.39.) Also, numerous homeless people witnessed or experienced deprivations of property when it was summarily destroyed by the City Police or others under their direction. SSF 31-53. The singling out of homeless people for such treatment is consistent with the City's animus toward homeless people; according to officer Zoulas the City's underlying objective is to keep them "circulating" through the city. SSF 9.

-9-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

The Supreme Court has held that "negative attitudes" about a certain class of people is not a rational basis for a policy targeting that group. *City of Cleburne, supra,* 470 U.S. at 448. Targeting homeless people without any permissible justification strongly indicates that "the decision maker…selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects on an identifiable group. *Wayte v. United States* 470 U.S. 598, 610 (1985). A reasonable inference from the City's practice of destroying homeless people's property is that it was adopted as part of an effort to keep homeless people "circulating" – not because it was necessary to keep the City clean, an objective that could have been met by storing such property.

## II. PLAINTIFFS AND DEFENDANTS WAIVED THE PROCEDURE FOR INITIAL DISCLOSURE AND THEREFORE THERE IS NO REASON TO SANCTION PLAINTIFFS FOR FAILURE TO SUPPLEMENT THEIR INITIAL DISCLOSURE

In their Opposition to Plaintiffs' pending Motion for Class Certification, filed May 20, 2009, Defendants have taken the position that Plaintiffs are not entitled to rely on the Declarations of witnesses whose names were not disclosed as part of a supplemental disclosure following the initial disclosure under Fed. Rule of Civ. Pro. 26(e)(1)(A). Because Defendants may raise this objection with respect to the current Motion in their Reply, Plaintiffs here address the issues raised by Defendants with respect to such Declarations.

There is no basis for the imposition of sanctions or the exclusion of Declarations filed by witnesses in Plaintiffs' Opposition to this Motion. This is because the parties waived, both explicitly and implicitly, their mutual obligation to follow the procedures for initial disclosure set forth in the Federal Rules, and Plaintiffs therefore had no reason to update or supplement information under the Rules. This said, Plaintiffs have no objection to providing Defendants an opportunity to depose or otherwise conduct discovery with regard to the existence of these witnesses or any others that Plaintiffs may subsequently find.

The fact that all parties waived compliance with the initial disclosure procedure under Fed Rule of Civ. Pro. 26(a)(1) is apparent from the stipulation filed by the parties –the City of

-10-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

1 Sacramento, the County of Sacramento, as well as the individual Defendants and the Plaintiffs –
2 on January 29, 2008. In this stipulation, which was included in the Parties' Joint Status Report, the
3 Parties agreed that initial disclosures should be made sixty days after the Court's issuance of the
4 Pretrial Scheduling Order. (Declaration of Cathleen Williams, Exhibit A). Thus, no party had a
5 problem with the fact that the statutory procedure for disclosure had not been followed up to this
6 point, almost six months after the Complaint was filed.

7 The Pretrial Scheduling Conference was duly held and on February 28, 2008, the Court
8 issued its Pretrial Scheduling Order. (Declaration of Cathleen Williams Exhibit B.) *This order did*
9 *not reference or incorporate the parties' stipulation that initial disclosures be made within 60*
10 *days. No party subsequently made disclosures in accordance with the statutory procedure or in*
11 *accordance with the stipulation. No party objected to any other parties' failure to make such*
12 *disclosures.* Instead, both formal and informal discovery proceeded; significantly, other than
13 depositions of the named Plaintiffs, the City conducted no discovery, and formulated no
14 Interrogatories regarding the identity of witnesses. (Declaration of Cathleen Williams ¶4.)

15 Months later, from July, 2008 through October 2008, plaintiffs' counsel found the
16 witnesses whose Declarations were submitted in support of Plaintiffs' Motion for Class
17 Certification, filed in October, 2008, and later in their Opposition to Defendants' Motion for
18 Summary Judgment. Discovery closed on October 10, 2008, although Plaintiffs and Defendant
19 County of Sacramento requested that the deadline be extended in view of the fact that the trial is
20 not scheduled until January, 2010. This extension was opposed by the City. (Declaration of
21 Cathleen Williams paragraphs ¶¶6-7.)

22 While there is no written evidence that the parties waived compliance with the stipulation,
23 the fact that no party complied with it indicates it was "honored in the breach." Since the Court did
24 not include the stipulation in the Pre-trial Scheduling Order, the parties may have regarded the
25 initial disclosure procedure as a "dead letter," or perhaps the deadline was simply not calendared.
26 At any rate, it was ignored, without objection, by all three counsel. Plaintiffs' counsel Cathleen
27 Williams did not intentionally fail to disclose witnesses. (Declaration of Cathleen Williams ¶4.)

-11-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
*Anthony Lehr, et al. vs. City of Sacramento, et al.;* USDC-East. Dist. #2:07-CV-01565 MCE GGH

While, as noted above, Plaintiffs will work co-operatively with the City to locate and depose any and all witnesses in this case, the City's contention that Plaintiffs should be sanctioned for their failure to disclose witnesses is without merit. First, Rule 26(e)(1)(A), which requires a party to supplement its initial disclosure, applies by its terms *only* when initial disclosures have been made. Here, no party complied with the initial disclosure procedure. Secondly, the City's claim that sanctions are in order is unfair, since the City, along with the other parties, participated in a *de facto* waiver of the statutory requirements by failing to make disclosures itself and by failing to object to other parties' failure to do so. Thirdly, the City conducted no discovery relating to Plaintiffs' witnesses, when it was free to do so regardless of the parties' waiver of and non-compliance with the initial disclosure procedure. Fourthly, the City has been aware for some seven months – since the Motion for Class Certification was filed in October, 2008 – that there were allegedly "undisclosed" witnesses, and has failed to communicate to Plaintiff that it wished to depose these witnesses or to re-open discovery. Finally, the Declarations of these witnesses were admitted into evidence in connection with the City's previous Motion for Summary Judgment/Adjudication without objection from the City.

All these circumstances indicate that the Defendants have not been harmed by the alleged failure to disclose, since it made no previous objection to and evinced no concern with the mutual failure to comply with Rule 26's disclosure requirements. Rather, Defendants are belatedly trying to take advantage of a situation in which they participated fully – namely, the parties' waiver of and non-compliance with the requirements of Rule 26.

In *Yaodi Hu v. Park National Bank* 2009 Lexis 9992 (May 7, 2009), pp. 3-4, the Sixth Circuit of Appeals analyzed a similar situation. There, the plaintiff claimed, after summary judgment was granted for the Defendants, that he was entitled to additional discovery because the Defendants failed to make initial disclosures as required by Rule 26(a)(1). The Court noted that the Plaintiff had not made any initial disclosures either, had not moved to compel the Defendants to make such disclosures, and had not propounded any discovery himself before the discovery deadline. Under these circumstances, the failure of the Defendants to make initial disclosures did

-12-

1 not excuse the Plaintiff's lack of diligence, and the Court denied the Plaintiff's request for
2 additional discovery. Here, although Plaintiffs are fully prepared to co-operate with the Defendants
3 in locating the allegedly non-disclosed witnesses, the imposition of sanctions would reward
4 Defendants for their own non-compliance with Rule 26 and their own lack of diligence, granting
5 them an advantage that they are not entitled to, in the absence of any showing of prejudice.

## CONCLUSION

Because there is no rational basis for the systematic destruction of the property of homeless people by the City, Defendant City's Motion for Summary Adjudication with respect to the Third Cause of Action should be denied. The Declarations filed in Opposition to this Motion should not be stricken as a sanction for Plaintiffs' non-compliance with Rule 26, since such non-compliance was mutual, consensual, and inadvertent. Defendants' Motion for Summary Judgment/Adjudication should be denied.

DATED: May 28, 2009                    Respectfully Submitted,

LAW OFFICE OF MARK E. MERIN

/s/ - "Cathleen A. Williams"
By: _____
    Cathleen A. Williams
    Attorneys for Plaintiffs

-13-