UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTHONY LEHR, et al.,                    No. 2:07-cv-01565-MCE-GGH

        Plaintiffs,

    v.                                   MEMORANDUM AND ORDER

CITY OF SACRAMENTO, et al.,

        Defendants.

----oo0oo----

Through this action, numerous homeless individuals certified as a class (collectively, "Plaintiffs") seek redress from the City of Sacramento ("the City" or "Defendant") for alleged violations of their Fourth and Fourteenth Amendment Rights.

A jury trial commenced on May 9, 2011. At the close of their case, Defendant moved for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a)[1] concerning all claims asserted by the class representatives and class members.[2]  The Court denied that Motion. On May 24, 2011, the jury rendered a verdict.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise stated.

[2] That motion was a prerequisite for bringing the present Rule 50(b) motion.  Janes v. Wal-Mart Stores, Inc., 279 F.3d 883, 886-87 (9th Cir. 2002).

1

1  Through this motion, Defendant now moves for Renewed
2  Judgment as a Matter of Law pursuant to Rule 50(b).  (Def.'s Mot.
3  J. Matter of Law, 2:21-27, June 13, 2011, ECF No. 189.)
4  Alternatively, Defendant requests that the Court order a new
5  trial, pursuant to Rule 59(a).  (Def.'s Mot., 3:2-9, ECF
6  No. 189).  Plaintiffs filed a timely opposition to Defendant's
7  Motion.  (Pls.' Opp'n, June 30, 2011, ECF No. 191.)

8  For the reasons set forth below, Defendant's Motions are
9  denied.

11  **BACKGROUND**

13  This is a class-action lawsuit.  The members of the class
14  are individuals who were homeless in the City from August 2, 2005
15  to the present.  The class is represented by Plaintiffs Connie
16  Hopson and Linda McKinley.  Plaintiffs allege that Defendant,
17  through its police officers and other employees, had a custom of
18  seizing and disposing of, or destroying, their personal property.
19  Plaintiffs further allege that Defendant's police officers and
20  other employees either personally seized and disposed of, or
21  destroyed, their personal property, or directed or supervised
22  others in doing so.  Plaintiffs claim that Defendant's seizure
23  and destruction of their property violated their Fourth and
24  Fourteenth Amendment rights.
25  ///
26  ///
27  ///
28  ///

2

1    Specifically, Plaintiffs argue that Defendant violated their
2    right to be free from unreasonable seizure of their property;
3    their right to advance notice of the seizure; and their right to
4    notice that their property could be reclaimed within ninety days
5    if it was seized.  Plaintiffs also allege that Defendant had a
6    custom of treating Plaintiffs' personal property in a different
7    and discriminatory manner, as compared to the found or abandoned
8    personal property of non-homeless persons, in violation of the
9    Fourteenth Amendment.

10    Defendant denies that it had a custom of seizing, disposing
11    of, or destroying personal property of Plaintiffs Connie Hopson
12    and Linda McKinley, or any of the class members.  Defendant
13    further denies that it treated the personal property of
14    Plaintiffs, or homeless people in the class, differently from the
15    personal property of non-homeless persons.  Defendant also denies
16    that Plaintiffs' constitutional rights were violated.

17    At trial, seventeen homeless or formerly homeless witnesses,
18    as well as three persons working with homeless people, testified
19    in support of Plaintiffs' claims that their property had been
20    wrongfully seized and destroyed by the City in violation of the
21    Fourth and Fourteenth Amendments.  An additional five homeless or
22    formerly homeless individuals testified by deposition that their
23    property had been wrongfully seized by Defendant's employees and
24    agents.  All twenty-two homeless witnesses testified that they
25    saw their personal property thrown away into dumpsters, dump
26    trucks, or trailers, or mixed with garbage and/or the property of
27    others.
28    ///

They testified that they never saw their property bagged or labeled such that it could later be booked and stored by the police.  Several witnesses also testified that they visited the City's Sequoia Pacific storage facility and were told that their property had never been catalogued and stored.

Defendant called four witnesses on its behalf.  First, Police Officer Mark Zoulas testified at trial that he was assigned to be the direct liaison with the homeless in 1997.  He testified that when assigned, the only instruction he was given was to "end homelessness in Sacramento."  He further stated that he was not told at the time of his assignment, or at any other time, that any departmental policies governed his work. Defendant Zoulas also testified that he routinely left a notice at homeless camps, warning that the camp must be vacated and that any property left behind would be considered abandoned and disposed of accordingly.  Second, Officer Chargin testified at trial that he was assigned to work as Officer Zoulas' partner in late 2009.  Officer Chargin testified that he followed Officer Zoulas' practice of posting a notice stating that property not moved would be disposed of.  Officer Chargin also initiated the practice of booking and storing homeless property in accordance with the Department's General Order.

During the trial, both Officer Zoulas and the third defense witness, Officer Cooper, denied that they ever had intentionally thrown away property belonging to homeless people in the course of clean-ups of homeless camps.

///

///

4

The fourth and final defense witness, Captain Mathes, testified
at trial that she was in charge of 160 personnel at the central
command of the Sacramento Police Department, which included
Officers Zoulas, Cooper, and Chargin.  She testified that all
officers were trained in departmental procedures for booking
found property.  These procedures were set forth in a General
Order that was admitted into evidence.  There was no testimony
that any policies were issued regarding the implementation of the
General Order specific to the seizure of homeless property.

Significantly, Defendant submitted no testimony, or
documentary evidence from any storage facility, to establish that
Officers Zoulas and Cooper had in fact booked property from 2005
to 2009, except on occasions when homeless individuals were taken
into custody.  Additionally, Officer Zoulas stated that homeless
people had lost property as a result of clean-ups by public
agencies, including the City of Sacramento.  He testified that he
had received complaints from over one hundred people about
property loss over the course of his work.

On May 24, 2011, after four and one-half days of
deliberations, the jury answered eight Special Questions on the
Verdict Form.  (ECF No. 187.)  The jury answered Questions One,
Four, and Six in the affirmative, and thus in favor of
Plaintiffs.  Question One asked: "Did employees or agents of the
City of Sacramento (such as city police officers, park safety
rangers, sanitation workers, and/or clean-up workers under the
personal supervision of city employees) seize and then throw away
or destroy the personal property of Connie Hopson, Linda McKinley
and/or other homeless persons?"  The jury answered "Yes."

Question Four asked: "Between August 2, 2005, and the present, did the City of Sacramento (acting through its employees) have a longstanding custom or practice of not giving adequate notice to homeless individuals concerning how they could retrieve their property, assuming their personal property was seized and stored?"  The jury answered "Yes."  Question Six asked: "Between August 2, 2005, and the present, did the City of Sacramento have a longstanding custom or practice of failing to implement appropriate policies concerning the booking or handling of homeless individuals' property?"  The jury answered "Yes."

Defendant contends that the jury's answers to Questions Four and Six are contrary to all evidence presented during trial, and Defendant is therefore entitled to Judgment as a Matter of Law. In the alternative, Defendant argues that it is entitled to a new trial regarding the issues presented by Questions Four and Six. Defendant claim that the jury's answers to these Questions are against the clear weight of the evidence presented during trial, and failure to grant a new trial would result in a miscarriage of justice.

**STANDARD**

**A.   Motion for Judgment as a Matter of Law**

Judgment as a matter of law is proper only if "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury."  White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002).

6

1  That is, "a motion for judgment as a matter of law is properly

2  granted only if no reasonable juror could find in the non-moving

3  party's favor."  Mangum v. Action Collection Serv., Inc.,

4  575 F.3d 935, 939 (9th Cir. 2009).

5      The jury's verdict must be upheld if it is supported by

6  substantial evidence.  Johnson v. Paradise Valley Unified Sch.

7  Dist., 251 F.3d 1222, 1227 (9th Cir. 2001) (citing Gilbrook v.

8  City of Westminster, 177 F.3d 839, 864 (9th Cir. 1999)).

9  Substantial evidence is "evidence adequate to support the jury's

10  conclusion, even if it is also possible to draw a contrary

11  conclusion from the same evidence."  Id. (citing Gilbrook,

12  177 F.3d at 856).  In ruling on a post-judgment motion for

13  judgment as a matter of law, the trial court must review the

14  entire record, not just the evidence most favorable to the non-

15  moving party.  Id.  However, the court may not make credibility

16  determinations or weigh the evidence.  Reeves v. Sanderson

17  Plumbing Prods., 530 U.S. 133, 150 (2000).  In short, the court

18  may not substitute its view of the evidence for that of the jury.

19  Johnson, 251 F.3d at 1227 (citing Gilbrook, 177 F.3d at 856).

20

21      **B.   Motion for a New Trial**

22

23      A district court has discretion to grant a new trial when a

24  jury's verdict is contrary to the "clear weight of the evidence,"

25  or is based on false evidence.  Rattray v. City of Nat'l City,

26  51 F.3d 793, 800 (9th Cir. 1994).

27  ///

28  ///

7

A verdict is against the clear weight of the evidence when, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed [by the jury]." Landes Constr. Co., Inc. v. Royal Bank of Can., 833 F.2d 1365, 1371 (9th Cir. 1987) (internal citations and quotations omitted).  A new trial may also be ordered when needed to prevent a "miscarriage of justice." Rattray, 512 F.3d at 800.  In ruling on a motion for a new trial, "the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 190 (9th Cir. 1989).

**ANALYSIS**

**A.    Motion for Judgment as a Matter of Law**

   **1.    Special Question Four**

Question Four on the Verdict Form asked: "Between August 2, 2005, and the present, did the City of Sacramento (acting through its employees) have a longstanding custom or practice of not giving adequate notice to homeless individuals concerning how they could retrieve their property, assuming their personal property was seized and stored?"  The jury answered "Yes."

///
///
///
///
///

8

1    Defendant argues that the jury's finding on the issue of its
2    longstanding "custom or practice" relating to post-seizure notice
3    is "clearly contrary to the testimony of the twenty-two homeless
4    individuals who testified in court or whose deposition
5    transcripts were read during trial."  (Def.'s Mot., 4:18, ECF No.
6    189.)  In support of this contention, Defendant argues that
7    because seventeen of the twenty-two homeless individuals were not
8    present at the time that their property was allegedly taken by
9    City employees, it "would have been impossible for City personnel
10   to provide any verbal or written notice to these individuals...
11   concerning where and how they could retrieve their property."
12   (Def.'s Mot., 4:25-27, ECF No. 189.)  Defendant asserts that a
13   written notice in an open area could be destroyed by weather
14   conditions, and would invite anyone who found a written notice to
15   attempt to claim the personal property seized by the City.
16   (Def.'s Mot., 5:7-13, ECF No. 189.)

17   However, the evidence at trial included the notice routinely
18   posted at homeless camps by Defendant Zoulas, which warned that
19   the camp must be vacated and that any property left behind would
20   be considered abandoned and disposed of accordingly.  The
21   evidence at trial also included the testimony of twenty-two
22   homeless or formerly homeless witnesses.  Of these witnesses,
23   seventeen testified that they had spoken with an officer either
24   at the time that their property was seized or within several days
25   of the City seizing their property.
26   ///
27   ///
28   ///

From this evidence, a reasonable jury could conclude that
Defendant had reasonable opportunities to provide adequate
written and/or verbal notice to Plaintiffs regarding how they
could retrieve their personal property, assuming it was seized
and stored, and yet failed to do so.[3]

Other witnesses, including Kenneth Anwyl, Connie Hopson,
Carol Carlile, Antionette Chitwood, Izeal Hollins, and Leticia
Del Toro testified that they had not spoken with officers, and
had received no notice about how to retrieve their seized
personal property.  Since there was evidence going both ways on
the notice issue, the jury could have reasonably found that the
testimony of the above enumerated witnesses supported Plaintiffs'
contention that Defendant failed to provide Plaintiffs with
adequate notice regarding their ability to retrieve their
personal property.

Finally, Steven Puchreiter, Kevin King, Gregory Wills, James
Venzant, and John Anderson each testified that they were given
information about how to retrieve their personal property that
was seized by Defendant.

///

---

[3] Defendant also argues that many of these individuals
"became aware of the fact their personal property was taken by
employees of the Sacramento Police Department or City
employees...[yet] each testified and admitted they made no
attempt to contact the Sacramento Police Department to recover
their personal property."  (Def.'s Mot., 5:14-18, ECF No. 189.)
However, many witnesses testified that they were told that they
would not be able to recover their property, and that there was
"nothing that could be done."  (See, e.g., Test. Karen Hersh,
40:9, May 18, 2011, ECF No. 165.)  Thus, a reasonable jury could
conclude that the City's failure to provide adequate notice
concerning how Plaintiffs could retrieve their property caused
Plaintiffs' loss.

These individuals were either given a number to call or were told
to go to the Sequoia Pacific storage facility to retrieve their
property.  A reasonable jury could conclude from this evidence
that Defendant was able to provide Plaintiffs with adequate
notice regarding how to retrieve their personal property, and yet
had a longstanding custom or practice of failing to do so.

Based on the foregoing, there is substantial evidence to
support the jury's conclusion.  While it is possible to draw a
contrary conclusion from the same evidence, the law does not
require the evidence to be black and white.  The evidence
presented at trial would allow a reasonable jury to conclude that
Defendant had a longstanding custom of failing to give adequate
notice to homeless individuals concerning how they could retrieve
their property, assuming it was seized and stored.  Viewing the
evidence in the light most favorable to the non-moving party,
there is certainly "evidence adequate to support the jury's
conclusion."  Johnson, 251 F.3d at 1227 (internal citations
omitted).  It simply cannot be said that there is a "complete
absence of probative facts to support...[the] conclusion reached
so that no reasonable juror could have found for...[Plaintiffs]."
Eich, 350 F.3d at 761.  Accordingly, Defendant's Motion for
Judgment as a Matter of Law is denied as to Question Four.

///
///
///
///
///
///

11

### 2.   Special Question Six

Question Six on the Verdict Form asked: "Between August 2, 2005, and the present, did the City of Sacramento have a longstanding custom or practice of failing to implement appropriate policies concerning the booking or handling of homeless individuals' property?"  The jury answered "Yes." Defendant argues that the jury's finding is "clearly contrary to all evidence presented during the trial of this case."  (Def.'s Mot., 8:27, ECF No. 189.)

The jury instructions concerning the City's failure to implement appropriate policies regarding the booking or handling of homeless individuals' property required the jury to find for Plaintiffs on four issues: (1) that the City was obligated to adopt special departmental policies concerning the lawful taking, disposal, and/or storage of homeless property; (2) that the City had failed to adopt such policies; (3) that the City was deliberately indifferent to the consequences of its failure to do so; and (4) that the failure to do so caused the deprivation of the Plaintiffs' rights.  (Jury Instruction 12, ECF No. 171.)

Defendant argues that the General Orders for the Sacramento City Police Department, in effect since 2005, expressly required that all City Police employees follow the provisions of the California Civil Code pertaining to the handling of property booked for safekeeping and for lost property.  Captain Mathes testified that the California Civil Code requires the City Police to hold property that is booked for safekeeping for sixty days, and to hold lost property for ninety days.

12

Officers Zoulas, Cooper, and Chargin each testified that they received training and were familiar with the General Orders concerning the handling and booking of lost property and of property for stored for safekeeping.

However, all twenty-two homeless witnesses testified that they saw their property thrown away into dumpsters, dump trucks, and trailers, mixed with garbage, and sometimes wrecked or crushed.  No witnesses testified that they observed their property bagged or labeled.  Furthermore, Steven Puchreiter, Kevin King, and John Anderson each testified that they went to the Sequoia Pacific storage facility several days after their property was seized, and were told by City employees that their property was not there.  Officer Zoulas testified that he received no instructions regarding the handling of seized homeless property in the time that he was assigned as the Police Department's liaison with the homeless people of Sacramento.  The notice which he left at homeless camps before camp clean-ups stated that any property left behind was subject to disposal.

Based on the foregoing evidence, a reasonable jury could conclude that Defendant needed to adopt special departmental policies concerning the lawful taking, disposal, and/or storage of homeless property, and that the City failed to adopt such policies.  As such, a reasonable jury could conclude that the first two elements required by the jury instructions were satisfied.

///

///

///

13

As to the third element, Defendant argues that because it was not "specifically made aware of the need to adopt special new policies relating to the booking or handling of property," no deliberate indifference by the City was shown. (Def.'s Mot., 8:6-10, ECF No. 189.)  The jury instructions defined deliberate indifference as "the conscious choice to disregard the consequences of one's acts or omissions." (Jury Instruction 12, ECF No. 171.)  The jury instructions further stated that Plaintiffs "may prove deliberate indifference in this case by showing that the defendant City of Sacramento knew its failure to adopt departmental policies or to implement rules and regulations made it highly predictable that its police officers and other employees would engage in conduct that would deprive persons such as the Class Representative and the Class members of their rights." (Jury Instruction 12, ECF No. 171.)

The evidence at trial included the testimony of seventeen witnesses who had complained to City Police officers about the seizure of their property, either at the time that their property was seized or within several days of Defendant seizing their property.  Officer Zoulas himself testified that homeless individuals complained to him about the loss of their property due to the City confiscating property throughout the relevant time period.  The evidence showed that many police officers, including Captain Mathes and others, were present at large clean-ups of homeless camps which resulted in the destruction of homeless property.

///

///

Viewing the evidence in the light most favorable to Plaintiffs, the evidence presented was adequate to support the jury's conclusion that Defendant was deliberately indifferent to the consequences of its failure to adopt departmental policies, rules and regulations concerning the handling of homeless individuals' property.

Finally, Defendant argues that there was no evidence establishing a causative link between Defendant's alleged failure to implement special rules and regulations relating to the booking or handling of homeless property and Plaintiffs' alleged loss of personal property.  Defendant argues that Plaintiffs "offered no evidence during trial that the personal property of any of the twenty-two witnesses who claimed their property was taken by the City would not have had their property taken, if the City had implemented special policies...regarding the booking or handling of homeless individuals' property...."  (Def.'s Mot., 8:21-24, ECF No. 189.)

This argument is unpersuasive.  The question presented to the jury by the Verdict Form was not whether the failure to implement policies regarding the booking and handling of homeless property caused the property to be taken; rather, the question was whether the failure to implement such policies caused the property of homeless individuals to be destroyed without adequate notice.

///
///
///
///

15

The evidence presented at trial, particularly the testimony of those individuals who checked for their property at the Sequoia Pacific storage facility and were informed that their property was not there, could allow a reasonable jury to conclude that the City's failure to implement such policies caused the property of homeless individuals to be destroyed without notice.

Taking these four factors together, and viewing the evidence in the light most favorable to the non-moving party, the Court finds that the jury's verdict as to Question Six is supported by substantial evidence.  The evidence presented at trial was not such that only a conclusion in favor of Defendant was possible. Defendant's Motion for Judgment as a Matter of Law is therefore denied as to Question Six.

Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law is unwarranted and therefore denied.  In the alternative, Defendant filed a Motion for a New Trial, which is addressed below.

**B.   Motion for a New Trial**

  **1.   Special Question Four**

Defendant argues that the jury's affirmative answer to Question Four is against the clear weight of the evidence presented at trial.  Defendant further asserts that the Court's failure to grant a new trial for the issue of whether the City had a longstanding custom or practice of not giving adequate notice to homeless individuals concerning how they could retrieve their property would result in a miscarriage of justice.

Defendant claims that the testimony of the twenty-two witnesses at trial does not support Plaintiffs' claim that Defendant had a longstanding custom and practice of failing to give adequate notice to homeless individuals concerning how they could retrieve their property, assuming their personal property was seized and stored.  (Def.'s Mot., 10:25, ECF No. 189.)

Defendant claims that because there are between 2500 and 3500 homeless individuals each night in Sacramento, the testimony of twenty-two individuals is not enough to establish a "widespread, well-settled practice or custom that constitutes a standard operating procedure."  Defendant suggests that because Plaintiffs only presented twenty-two witnesses, only twenty-two homeless individuals in Sacramento were not provided with adequate notice about how they could retrieve their personal property, assuming their personal property was seized and stored by City employees.  According to Defendant, this evidence shows only that Defendant failed to give adequate notice to an average of slightly more than three individuals each year, which does not establish a longstanding custom or practice.  (Def.'s Mot., 11:23, ECF No. 189.)

However, it is simply a matter of common sense that Plaintiffs could show Defendant's "widespread, well-settled practice" of failing to provide adequate notice to members of the class without presenting the total number of persons in the class who did not receive adequate notice.  It would be unpractical and unreasonable for Plaintiffs to present as a witness every single member of the class who did not receive adequate notice regarding how to retrieve their seized property.

Viewed reasonably, these witnesses are a representative sample of the class members; they do not represent the absolute number of homeless individuals who did not receive adequate notice concerning how they could retrieve their seized property.

Furthermore, the evidence presented by the Plaintiffs at trial, see supra, made clear that it was not only these twenty-two witnesses that did not receive adequate notice concerning how they could retrieve their personal property, assuming their property was seized and stored.  Multiple witnesses testified that they saw the property of many homeless individuals seized and thrown away.  Furthermore, the notice posted by Officer Zoulas at homeless camps indicates that the City did not systematically give adequate notice to homeless individuals about how to retrieve their seized property.  Given the evidence presented at trial, the Court is not "left with the definite and firm conviction that a mistake has been committed [by the jury]." Landes Constr. Co., Inc., 833 F.2d at 1371.  The jury's verdict as to Special Question Four is not against the clear weight of the evidence, and denying Defendant's Motion will not result in a miscarriage of justice.  Accordingly, Defendant's Motion for a New Trial is denied as to Question Four.

///

///

///

///

///

///

///

18

1          **2.    Special Question Six.**

2

3        Defendant argues that the jury's answer to Question Six is

4   against the clear weight of the evidence presented at trial.

5   Defendant further argues that the Court's failure to grant a new

6   trial for the issue of whether Defendant had a longstanding

7   custom or practice of failing to implement appropriate policies

8   concerning the booking or handling of homeless individuals'

9   property would result in a miscarriage of justice.  Defendant

10  asserts that there was no evidence presented by Plaintiffs

11  demonstrating that, between August 2, 2005 and the present,

12  Defendant was specifically aware of the need to implement any

13  special policies concerning the personal property of homeless

14  individuals.

15       Defendant claims that in the absence of such evidence,

16  Plaintiffs failed to prove by a preponderance of the evidence

17  that Defendant was deliberately indifferent to the consequences

18  of its failure to adopt such policies.  Defendant also asserts

19  that Plaintiffs failed to present evidence showing a causative

20  link between Defendant's failure to adopt such policies and the

21  "taking of personal property of any of the twenty-two homeless

22  individuals whose testimony was offered at trial."  (Def.'s Mot.,

23  13:12-13, ECF No. 189.)

24       However, the evidence presented at trial included the

25  testimony of seventeen homeless witnesses who stated that when

26  their property was seized or confiscated by the police, they

27  complained to the police either at that time or within several

28  days.  See supra.

1   Many times, these individuals were told by City police officers

2   that they could not get their property back, or that there was

3   nothing that could be done.  See supra.  Witnesses also testified

4   that when they went to retrieve their property from the Sequoia

5   Pacific storage facility, they were told it was not there.  See

6   supra.  The evidence also included the testimony of Officer

7   Zoulas, who stated that homeless individuals complained to him

8   about the loss of their property due to City confiscation.

9   Finally, the jury found that Defendant had a practice of seizing

10  and then throwing away or destroying the property of homeless

11  persons.  (Verdict Form, Question One, 1:25, ECF No. 187.)

12      Given such evidence and factual findings, the jury's verdict

13  as to Question Six is not against the clear weight of the

14  evidence.  The jury could reasonably conclude from the evidence

15  that Defendant needed to adopt special policies pertaining to the

16  booking and handling of homeless property and failed to do so,

17  that Defendant was aware of the consequences of their failure to

18  adopt such policies, and that Defendant's failure to adopt such

19  policies resulted in the destruction of Plaintiffs' property

20  without adequate notice.[4]  In weighing the evidence, the Court

21  does not have a "definite and firm conviction" that the jury

22  committed a mistake by answering Question Six in the affirmative.

23  ///

24  ///

25

26      [4] The Court again notes that the question is not whether
    Defendant's failure to adopt such policies resulted in
27  Plaintiffs' property being taken, but whether the failure to
    adopt such policies resulted in Plaintiffs' property being
28  destroyed without adequate notice.

1  Defendant's Motion for a New Trial on the issue of whether

2  Defendant failed to implement appropriate policies concerning the

3  booking or handling of homeless individuals' property is

4  therefore denied.

5

6                              **CONCLUSION**

7

8       Defendant did not allege any procedural errors that might

9  call into question the jury's verdict; rather, Defendant alleges

10 only that there is no factual basis for the jury's conclusion.

11 However, the Court finds that the jury's verdict as to Special

12 Questions Four and Six are each supported by substantial

13 evidence.  The Court further finds that the evidence, construed

14 in the light most favorable to the nonmoving party, allows for

15 more than one reasonable conclusion.  The evidence offered at

16 trial would support a reasonable jury's finding that Defendant

17 had a longstanding custom or practice of not giving adequate

18 notice to homeless individuals concerning how they could retrieve

19 their property, assuming their personal property was seized and

20 stored.  The evidence at trial would also support a reasonable

21 jury's finding that Defendant had a longstanding custom or

22 practice of failing to implement appropriate policies concerning

23 the booking or handling of homeless individuals' property.

24      Furthermore, the Court does not find that the jury's verdict

25 as to either Special Question Four or Six is against the clear

26 weight of the evidence.  The Court is by no means left with the

27 definite and firm conclusion that the jury has committed a

28 mistake.

In weighing the evidence at trial and assessing the credibility
of the witnesses presented by both Plaintiffs and Defendant, the
Court finds that the verdict reached was reasonable and fair, and
a new trial is not needed in order to prevent a miscarriage of
justice.  Defendant's Motion for Judgment as a Matter of Law is
therefore DENIED.  (ECF No. 189.) Defendant's alternative Motion
for a New Trial is also DENIED.  (ECF No. 189.)

        IT IS SO ORDERED.

Dated: August 15, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

22