UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEHR, et al., | No. 2:07-cv-01565-MCE-GGH |
| Plaintiffs, | |
| v. | **AMENDED MEMORANDUM AND ORDER** |
| CITY OF SACRAMENTO, | |
| Defendant. | |

This matter arises out of Plaintiffs' motion for attorney's fees and costs.  (ECF No. 224).  Defendant, the City of Sacramento, opposes the motion.  (ECF No. 231.)  For the reasons stated below, Plaintiffs' Motion is GRANTED, in part, as follows.[1]

**BACKGROUND**[2]

Plaintiffs, eleven homeless or formerly homeless individuals and three non-profit entities, initiated this action on August 2, 2007, and filed a First Amended Complaint ("FAC") on August 31, 2007.  (ECF Nos. 1, 9.)

---

[1] This Amended Memorandum and Order is identical to the original Memorandum and Order issued by the Court on March 22, 2013, except that it corrects a clerical error contained in the original Order at pages 10-11.

[2] Page references will be to the Court's ECF pagination.

1

1    By way of their FAC, Plaintiffs sought relief from alleged ongoing violations of the Eighth,

2    Fourth and Fourteenth Amendments to the United States Constitution by the City of

3    Sacramento ("City"), the County of Sacramento ("County") and a number of individual

4    defendants.  Plaintiffs specifically argued that: 1) enforcement of the City's "anti-

5    camping" ordinance violated the Eighth Amendment's proscription against cruel and

6    unusual punishment; 2) Defendants illegally confiscated Plaintiffs' personal property in

7    violation of the Fourth and Fourteenth Amendments; and 3) Defendants established and

8    maintained "policies, practices and conduct . . . intended and designed to single out

9    homeless people" that "had the purpose and effect of depriving homeless people of their

10   property," and that were "based on Defendants' animus towards this disfavored group

11   and lack[ed] a rational relationship to any legitimate state interest."  (ECF No. 9.)

12        On November 3, 2008, Plaintiffs moved for class certification but stipulated to

13   continue the hearing on the motion to permit the parties to attempt to mediate a

14   resolution of the litigation.  (ECF Nos. 20, 24.)  As a result of that mediation, Plaintiffs

15   and the County reached a settlement agreement and, on November 9, 2009, presented

16   to the Court a Stipulated Joint Motion for Preliminary Approval of Provisional Settlement

17   Class and Settlement of Class Action.  (ECF No. 106.)  On November 10, 2009, the

18   Court issued an Order for Preliminary Approval of the partial settlement.  (ECF No. 108.)

19   The settlement with the County fully and finally disposed of all claims against the County

20   and established a procedure by which those class members who lost property

21   specifically to County agents and employees could document their losses and submit

22   claims entitling them to receive monetary compensation.  (ECF No. 113.)  The claims

23   process was completed, and the Court gave its final approval to the settlement on

24   March 26, 2010, and dismissed the County as a defendant in this litigation.  (ECF

25   No. 119.)  Also, as part of the settlement, Plaintiffs' counsel recovered the stipulated

26   attorney's fees and costs from the County in the amount of $150,000.  (ECF Nos. 106,

27   108.)

28   ///

1    On March 27, 2009, the City moved for summary judgment on Plaintiffs' first and

2  second claims for relief.  (ECF No. 33.)  On May 19, 2009, the Court granted the City's

3  motion as to the Eighth Amendment claim, found that the organization plaintiffs were not

4  proper parties and dismissed the claims against the individually named defendants.

5  (ECF No. 72.)  However, the Court denied the motion as to the second claim and

6  permitted Plaintiff Hobson to pursue a claim against the City for herself and others

7  similarly situated for loss of property in violation of the Fourth and Fourteenth

8  Amendments.  (Id.)

9    On August 21, 2009, the Court granted Plaintiffs' motion for class certification of

10  their claims against the City.  (ECF No. 97.)  The jury trial in this action consummated on

11  May 9, 2011, and ended on May 24, 2011, when the jury brought in its verdict.  At the

12  conclusion of the trial, the jury found that the City's agents or employees (1) seized and

13  threw away or destroyed the property of the representative plaintiffs and other homeless

14  persons; (2) had "a longstanding custom or practice of not giving adequate notice to

15  homeless individuals concerning how they could retrieve their property, assuming their

16  personal property was seized and stored"; and (3) had "a longstanding custom or

17  practice of failing to implement appropriate policies concerning the booking or handling

18  of homeless individuals' property."  (ECF No. 187.)

19    Subsequently, the City filed a Motion for Judgment as a Matter of Law or for New

20  Trial, which the Court denied by its August 15, 2011 Order.  (ECF Nos. 189, 194.)  The

21  City appealed the jury verdict, but the Ninth Circuit dismissed the appeal and issued its

22  mandate on December 29, 2011.  (ECF Nos. 197, 198, 201.)

23    On March 6, 2012, the parties entered into a Stipulation to resolve the damages

24  portion of the trial which was approved and ordered by the Court on March 9, 2012.

25  (ECF Nos. 217, 218.)

26  ///

27  ///

28  ///

3

1    The negotiated Stipulation provided for a period of time during which claimants could

2    submit claim forms up until the "Bar Date" of June 8, 2012, documenting the loss of

3    property, with each approved claim being valued at either $400 or $750, depending upon

4    the tabulation of the items lost to defendants' agents or employees.[3]   The Stipulation

5    also provided that the City would implement new procedures with respect to removal,

6    confiscation and storage of the property belonging to homeless persons to prevent future

7    constitutional violations.   Finally, the Stipulation provided that a motion for attorney's

8    fees may be presented to the Court no earlier than 60 days from the Bar Date.  (Id.)

9         On September 11, 2012, Plaintiffs filed the instant Motion asking the Court to

10   approve the requested amount of $1,842,301.58 for attorney's fees and costs incurred in

11   the prosecution and settlement of this action.  (ECF No. 224.)  The City filed an

12   opposition contesting the amount of attorney's fees claimed by Plaintiffs.  (ECF No. 231.)

13   On October 18, 2012, the Court held an oral hearing on Plaintiffs' motion.

14

15                                    **STANDARD**

16

17        The Civil Rights Attorney's Fees Awards Act of 1976 permits the award of

18   attorney's fees in civil rights actions.  42 U.S.C. § 1988.  The statute provides, in

19   pertinent part:  "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983]

20   . . . , the court, in its discretion, may allow the prevailing party, other than the United

21   States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  A

22   "prevailing party" under § 1988 is a party who "succeed[s] on any significant issue in

23   litigation which achieves some of the benefit the parties sought in bringing suit."

24   Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

25   ///

26

27        [3] The claim period ended on June 8, 2012, and checks are being distributed to class members
     who submitted validated claims.  The City has forwarded a total of $796,050.00 to be paid to 1,143
28   approved claimants.  (ECF No. 234, at 9.)

                                           4

1    "Reasonableness" is the benchmark for attorney's fees awards under 42 U.S.C.

2    § 1988.  42 U.S.C. § 1988(b); Hensley, 461 U.S. at 433.  The "reasonableness"

3    determination is a two-step process.  First, the court should calculate a "lodestar" by

4    "multiplying the number of hours reasonably spent on the litigation by a reasonable

5    hourly rate."  McCown v. City of Fontana Fire Dep't, 565 F.3d 1097, 1102 (9th Cir. 2009).

6    The appropriate number of hours includes all time "reasonably expended in pursuit of

7    the ultimate result achieved in the same manner that an attorney traditionally is

8    compensated by a fee-paying client for all time reasonably expended on a matter."

9    Hensley, 461 U.S. at 431.  However, in calculating the lodestar, "the district court should

10   exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"  McCown,

11   565 F.3d at 1102.  Although district judges "need not, and should not, become green-

12   eyeshade accountants," Fox v. Vice, 131 S. Ct. 2205, 2216 (2011), the court should

13   provide some indication of how it arrived at its conclusions.  See Moreno v. City of

14   Sacramento, 534 F.3d 1106, 1111 (9th Cir.2008) ("When the district court makes its

15   award, it must explain how it came up with the amount."), Padgett v. Loventhal, 2013 WL

16   491024, at *2 (9th Cir. Feb. 11, 2013) ("We have long held that district courts must show

17   their work when calculating attorney's fees.").

18   As a general rule, in determining the lodestar figure, "the court should defer to the

19   winning lawyer's professional judgment as to how much time he was required to spend

20   on the case."  Moreno, 534 F.3d at 1112.  However, the party seeking an award of

21   attorney's fees bears the burden of producing documentary evidence demonstrating "the

22   number of hours spent, and how it determined the hourly rate(s) requested."  McCown,

23   565 F.3d at 1102.  Then the burden shifts to the opposing party to submit evidence

24   "challenging the accuracy and reasonableness of the hours charged or the facts

25   asserted by the prevailing party in its submitted affidavits."  Ruff v. County of Kings,

26   700 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010).

27   ///

28   ///

1    Second, the court may adjust the lodestar figure upward or downward based on

2  an evaluation of several factors articulated by the Ninth Circuit in Kerr v. Screen Extras

3  Guild, Inc., 526 F.2d 67 (9th Cir. 1975).  McGrath v. County of Nevada, 67 F.3d 248, 252

4  (9th Cir. 1995).  The Kerr factors include:

5

6              (1) the time and labor required, (2) the novelty and difficulty of
               the questions involved, (3) the skill requisite to perform the
7              legal service properly, (4) the preclusion of other employment
               by the attorney due to acceptance of the case, (5) the
8              customary fee, (6) whether the fee is fixed or contingent,
               (7) time limitations imposed by the client or the
9              circumstances, (8) the amount involved and the results
               obtained, (9) the experience, reputation, and ability of the
10             attorneys, (10) the 'undesirability' of the case, (11) the nature
               and length of the professional relationship with the client, and
11             (12) awards in similar cases.

12  Kerr, 526 F.2d at 69-70; see also E.D. Local Rule 293(c) (identifying the same factors as

13  relevant).  However, the court should exclude from its consideration factors that are

14  irrelevant or already subsumed in the initial lodestar calculation.  McGrath, 67 F.3d at

15  252; see also Blum v. Stenson, 465 U.S. 886, 898-900 (1984) (concluding that such

16  factors as "novelty and complexity of the issues," "the special skill and experience of

17  counsel," and "the quality of representation" are generally subsumed within the lodestar

18  calculation).  Because the lodestar figure is presumptively reasonable, "a multiplier may

19  be used to adjust the lodestar amount upward or downward only in rare and exceptional

20  cases, supported by both specific evidence on the record and detailed findings by the

21  lower courts that the lodestar amount is unreasonably low or unreasonably high."

22  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal

23  citations and quotation marks omitted).

24  ///

25  ///

26  ///

27  ///

28  ///

6

1          **ANALYSIS**

2

3          Plaintiff seeks a total of $1,843,301.58 in attorney's fees and costs incurred in the

4    prosecution and settlement of this class action.  (ECF No. 224-1, at 24.)  The City does

5    not contest that, for the purpose of considering an award of attorney's fees, Plaintiffs are

6    the prevailing party.  (ECF No. 231, at 5.)

7

8          A.      **Reasonable Hourly Rate**

9

10          In determining attorney's fees under Section 1988, the district court "must strike a

11    balance between granting sufficient fees to attract qualified counsel to civil rights cases

12    and avoiding a windfall to counsel."   Moreno, 534 F.3d at 1111 (internal citations

13    omitted).  Reasonable attorney's fees are calculated according to the prevailing market

14    rate in the relevant legal community.  Blum, 465 U.S. at 895.  The "relevant legal

15    community" in the lodestar calculation is generally the forum in which the district court

16    sits.  Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  However, there is a narrow

17    exception allowing the court to rely on rates outside the local forum when the plaintiff

18    establishes that "local counsel was unavailable, either because they are unwilling or

19    unable to perform because they lack the degree of experience, expertise, or

20    specialization required to handle properly the case."  Id.

21          The reasonable hourly rate "is not made by reference to rates actually charged by

22    the prevailing party."  Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.

23    1986).  Instead, the court should use the prevailing market rate in the community for

24    similar services of lawyers "of reasonably comparable skill, experience, and reputation."

25    Id. at 1210–11.  Accordingly, the rate to be applied in the present case is the prevailing

26    market rate for a civil rights attorney practicing in the Sacramento area.

27    ///

28    ///

1    See Taylor v. Chaing, 2009 WL 453050, at *9 (E.D. Cal. Feb. 23, 2009) ("The rate to be

2    applied is that of plaintiffs' counsel in the Sacramento area who engage in civil rights

3    actions against governmental entities."); H.W. v. E. Sierra Unified School Dist., 2012 WL

4    4469262, at *2 (E.D. Cal. Sept. 27, 2012) ("The rate to be applied is that of . . . counsel

5    in the Sacramento area who engage in civil rights actions.").  The court may use either

6    current or historical prevailing market rates.  Schwarz v. Sec'y of Health & Human Serv.,

7    73 F.3d 895, 908 (9th Cir. 1995) (internal citation omitted); see also Barjon, 132 F.3d at

8    502-03 ("[T]he district court may choose to apply either the attorney's current rates to all

9    hours billed or the attorney's historic rates plus interest."); In re Washington Pub. Power

10   Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires

11   charging current rates for all work done during the litigation, or by using historical rates

12   enhanced by an interest factor.").

13        The fee applicant bears the burden of demonstrating that "the requested rates are

14   in line with those prevailing in the community for similar services by lawyers of

15   reasonably comparable skill, experience and reputation."  Camacho v. Bridgeport Fin.,

16   Inc., 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  "[A]ffidavits of the plaintiffs'

17   attorneys and other attorneys regarding prevailing fees in the community . . . are

18   satisfactory evidence of the prevailing market rate" but "do not conclusively establish the

19   prevailing market rate."  Id.  In addition to considering affidavits and evidence submitted

20   by the parties, the court may also "rely on its own familiarity with the legal market."

21   Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

22        Plaintiffs' calculations of their attorney's fees are based on the following hourly

23   rates: (1) Mark Merin - $550; (2) Cathleen Williams - $550; and (3) Ronald Blubaugh -

24   $350.  (ECF No. 224-1, at 12.)  The City has posed no objections to the hourly rates

25   requested by Plaintiffs' attorneys.  (ECF No. 231, at 16-17.)  However, for the reasons

26   articulated below, the Court finds the requested hourly rates to be excessive.

27   ///

28   ///

1

2

### 1.  Mr. Merin

3

      In support of Plaintiffs' motion for attorney's fees, attorney Merin submitted his

own declaration (Merin Decl., ECF No. 225) establishing the following.  Mr. Merin is a

highly qualified civil rights attorney with over 40 years of relevant litigation experience.

Throughout his career, Mr. Merin has successfully litigated numerous complex civil rights

cases, including class actions against public entities throughout California, New Mexico,

Arizona, Texas and Florida.  (Id. ¶¶ 8-16.)  Mr. Merin declares that he has been awarded

fees based on his hourly fee of $550 on cases which he prosecuted in the Bay Area.  (Id.

¶ 23.)  Mr. Merin's reliance on rates awarded in civil rights cases litigated in the Northern

District of California are of no consequence to the determination of the attorney's fee

award in this action because, as the Court explained earlier, the relevant legal

community for the purposes of determining recoverable attorney's fees is the forum in

which this Court sits, which is Sacramento.  See Barjon, 132 F.3d at 500.

      Plaintiffs appear to argue that out-of-the-area rates should apply, or at least be

considered, by this Court because, due to "the scarcity in the Sacramento area of

experienced litigators . . . , most litigants seeking civil rights attorneys to litigate class

actions in the Eastern District have to find counsel in the Bay Area to pursue even

clearly meritorious claims."  (Merin Decl. ¶ 21.)  However, the only exception to the "local

forum" rule applies to situations in which a plaintiff demonstrates that the unavailability of

local counsel caused him to retain an out-of-area attorney.  Barjon, 132 F.3d at 500.

While it may be true that most litigants have to retain counsel from the Bay area to

represent them in complex civil rights cases filed in the Eastern District of California,

Plaintiffs here were able to retain very experienced and skilled local counsel to represent

them in this class action.

///

///

///

9

1    Accordingly, the Court declines to consider rates charged by attorneys practicing in the

2    Bay Area or any other localities outside the greater Sacramento area.[4]

3          Several local attorneys submitted declarations in support of Mr. Merin's requested

4    hourly rate.  Jay-Allen Eisen, a Sacramento attorney with over forty years of experience,

5    stated in his declaration that fees for counsel with more than 20 years of experience in

6    the Sacramento area generally range from a minimum of $350 an hour to over $500 an

7    hour.  (Eisen Decl., ECF No. 229 ¶ 13.)  Mr. Eisen's current hourly rate is $450.  (Id.

8    ¶ 17.)  Matthew G. Jacobs, a partner in the law firm of DLA Piper LLP, stated in his

9    declaration that "Mr. Merin and Ms. Williams . . . would have been very well justified in

10   charging $550 per hour (or more)."  (Jacobs Decl., ECF No. 228 ¶ 11.)  Mr. Jacobs

11   further informed the Court that his hourly rate from 2005 to 2008 "was close to or

12   equaled Mr. Merin's requested rate of $550," and that he has been charging more than

13   $550 per hour since 2008.  (Id. ¶¶ 8-10.)

14         The Court notes that neither Mr. Jacobs nor Mr. Eisen has informed the Court

15   about hourly rates charged by Sacramento attorneys practicing civil rights litigation.

16   Mr. Jacobs, for example, opines about rates charged for "work of similar complexity,

17   difficulty, and significance as my caseload," "work of the type undertaken by Mr. Merin in

18   this case," or "similar work," (see id. ¶¶ 8, 9, 10, 11), without clarifying what "type" of

19   work he refers to.  As explained above, the rate to be applied in the present case is the

20   prevailing market rate for a civil rights attorney practicing in the Sacramento area.

21   ///

22         [4] For the same reason, the Court declines to consider hourly rates in excess of $700 approved by
     district courts in Valdivia v. Brown, 848 F. Supp. 2d 1141 (E.D. Cal. 2011), and Kincaid v. City of Fresno,
23   No. 1:06-cv-01445-OWW-SMS (E.D. Cal. Jul. 18, 2008), on which Plaintiffs specifically rely.  In both
     cases, "the relevant legal community" was the San Francisco Bay area, rather than Sacramento, because
24   plaintiffs had presented evidence that no local attorneys were available.  See Valdivia, 848 F. Supp. 2d at
     1143 (concluding that plaintiffs had demonstrated that "there were no Sacramento firms experienced and
25   capable enough, and willing to undertake the case"); Kincaid, No. 1:06-cv-01445-OWW-SMS, ECF
     No. 321-1, at 19 (awarding San Francisco rates where all class counsel were attorneys practicing in the
26   Bay Area and the rates used for settlement purposes were "typical for that area.").  Plaintiffs' reliance on
     Kincaid is further misplaced because, in the present case, the parties in Kincaid stipulated to a
27   specific amount of $750,000 in recoverable attorney's fees which was substantially lower than the
     estimated lodestar amount of $2,746,033.  (See Reporter's Transcript of Proceedings in Kincaid v. City of
28   Fresno, Merin Decl. Ex. D, ECF No. 225-4, at 23.)

1  Because it appears that Mr. Jacobs's practice encompasses white collar criminal

2  defense and complex civil litigation, (see id. ¶ 7, 8, 10) and Mr. Eisen's practice involves

3  appellate litigation, the rates these attorneys charge for their respective types of legal

4  work are not necessarily representative of the rates charged by attorneys practicing civil

5  rights litigation in the Sacramento area.

6      Michael P. White, a Sacramento attorney with almost thirty years of experience,

7  also submitted a declaration on behalf of Plaintiffs' counsel.  (White Decl., ECF No. 230.)

8  Mr. White's primary area of practice is public sector labor law and civil rights, especially

9  employment law litigation under the California Fair Employment and Housing Act and

10  under the California Labor Code.  (Id. ¶ 4.)  Thus, Mr. White appears to have first-hand

11  knowledge about hourly rates charged by civil rights attorneys practicing in the

12  Sacramento area.  According to Mr. White, "[c]urrently, attorney fees in Sacramento

13  typically range from about $200 an hour for attorneys with less than 2-3 years of

14  experience, to $550 or more per hour for attorneys with more than 15 years of

15  experience," and "rates of $550 and more per hour [become] increasingly common."  (Id.

16  ¶ 17.)  The Court is not satisfied that the "increasingly common" rate of $550 per hour is

17  indicative of the "prevailing market rate" for legal services similar to those rendered by

18  Mr. Merin in this case.  As one court has rightly observed, "[p]laintiffs are not entitled to

19  retain the most expensive lawyers around with the idea that the opposition, who had no

20  say in the matter of plaintiffs' counsel retention, will have to pay such expensive rates."

21  Taylor, 2009 WL 453050, at *10.

22      The Court's own research has revealed that the prevailing hourly rate for

23  experienced civil rights attorneys practicing in the Sacramento area does not exceed

24  $400.[5]

25  ///

26

27  [5] In conducting its research, the Court has paid particular attention to cases decided within two years of the time when Plaintiffs' attorneys began their work in this case.  See Bell v. Clackamas County, 341 F.3d 858, 869 (9th Cir.2003) (holding that it was an abuse of discretion for the district court "to apply

28  market rates in effect more than two years before the work was performed.").

1    See, e.g., H.W. v. E. Sierra Unified School Dist., 2012 WL 4469262, at *1-2 (E.D. Cal.

2    Sep. 27, 2012) (concluding that the requested hourly rate of $375 per hour was a

3    reasonable rate for attorneys practicing civil rights litigation in the Sacramento area);

4    Jones v. County of Sacramento, 2011 WL 3584332, at *9 (E.D. Cal. Aug. 12, 2011)

5    (concluding that an hourly rate of $350 requested in a civil rights case by an attorney

6    with over 35 years of litigation experience was "in line with those prevailing in the

7    Sacramento market for similar services by lawyers of reasonably comparable skills,

8    experience and reputation"); Cosby v. Autozone, Inc., 2010 WL 5232992, at *3 (E.D.

9    Cal. Dec. 16, 2010) (finding that $375 per hour was a prevailing Sacramento rate for

10   experienced attorneys litigating cases under California's Fair Employment and Housing

11   Act and finding the requested fees of $400 and $450 per hour to be excessive);

12   Friedman v. Cal. State Employee Ass'n, 2010 WL 2880148, at *4 (E.D. Cal. July 21,

13   2010) (finding that $275 per hour was a reasonable rate for Sacramento civil rights

14   attorneys); Beecham v. City of West Sacramento, 2009 WL 3824793, at *4 (E.D. Cal.

15   Nov. 16, 2009) (finding that $375 per hour was the prevailing market rate charged by

16   Sacramento attorneys in a civil right case and refusing to award the requested $525-

17   $550 per hour fee); Cal. Pro-Life Council, Inc. v. Randolph, 2008 WL 4453627, at *4-5

18   (E.D. Cal. Sept. 30, 2008) (finding that an hourly rate of $385 for a lead trial counsel in a

19   civil rights case was reasonable for the Sacramento market).

20           Taking into consideration that Mr. Merin is one of the most experienced and

21   successful civil rights attorneys in the Sacramento area, the Court will base Mr. Merin's

22   compensation on the hourly rate at the top of the compensation range that exists in the

23   Sacramento legal market and will use the rate of $400 per hour for the purposes of

24   calculating Mr. Merin's attorney's fees.

25   ///

26   ///

27   ///

28   ///

1

2

### 2.   Ms. Williams

Ms. Williams has submitted a declaration stating that she has been practicing law in California since 1975 and has been focusing on class action civil rights litigation for the last ten years.  (Williams Decl., ECF No. 226 ¶¶ 2, 4).  Like Mr. Merin, Ms. Williams has extensive experience litigating civil rights cases in both state and federal courts.  (Id. ¶¶ 3-8.)  Because Ms. Williams' skills and experience and the quality of her work in this case seem comparable to those of Mr. Merin, the Court finds that the rate of $400 per hour is also a reasonable rate for Ms. Williams.

### 3.   Mr. Blubaugh

According to Mr. Blubaugh's declaration, he was admitted to the State Bar of California in December of 1975.  (Blubaugh Decl., ECF No. 227 ¶ 2.)  Mr. Blubaugh started his legal career by serving as a staff counsel for the California Public Employment Relations Board ("PERB").  (Id. ¶ 4.)  Subsequently, for more than two decades, Mr. Blubaugh served as an administrative law judge, and then chief administrative judge, of the PERB.  (Id. ¶¶ 5-6.)  After retiring in 2003, Mr. Blubaugh remained an active member of the State Bar and has been volunteering at the Senior Legal Hotline and Tommy Clinkenbeard Legal Clinic.  (Id. ¶¶ 11-12.)  Although Mr. Blubaugh has not previously billed for his legal services, he believes that his services should be valued at a rate comparable to what is customarily billed by senior associates or junior partners at local firms which litigate in federal court.  (Id. ¶ 18.)  Accordingly, Mr. Blubaugh is requesting to be compensated at a rate of $350 per hour. (Id.)

Plaintiffs have not provided any declarations or other evidence that would establish a prevailing market rate of $350 for time expended by Mr. Blubaugh on this case.  The Court notes that Mr. Blubaugh has less experience and expertise then

13

1   Mr. Merin and Ms. Williams in civil rights litigation.

2   However, taken into consideration Mr. Blubaugh's extensive legal experience, the Court

3   agrees that his services should be valued at a rate comparable to what civil rights

4   attorneys with approximately 7-10 years of experience would charge for similar legal

5   services in the Sacramento area.  The Court's research has revealed that a prevailing

6   rate in the Sacramento market for the services of an attorney with skills, experience and

7   reputation similar to those of Mr. Blubaugh does not exceed $260 per hour.  See, e.g.,

8   Jones, 2011 WL 3584332, at *9-10 (finding that $250 per hour was the Sacramento

9   market rate for a civil rights attorney with roughly ten years of litigation experience); Cal.

10  Pro-Life Council, Inc., 2008 WL 4453627, at *4-7 (using $230 to $260 per hour as a

11  reasonable rate for junior partners practicing in the Sacramento area).  Accordingly, the

12  Court will calculate Mr. Blubaugh's attorney's fee award based on the rate of $260 per

13  hour.

14

15          **B.**     **Failure to Keep Contemporaneous Records**

16

17        The City argues that the number of hours of attorney time for which Plaintiffs have

18  requested to be compensated should be reduced because Plaintiffs' counsel failed to

19  keep contemporaneous billing records.  (ECF No. 231, at 6-10.)  In particular, the City

20  points out to significant discrepancies between the billing records contained in the

21  application for attorney's fees previously submitted by Plaintiffs' counsel in connection

22  with their stipulation with the County and the present motion for attorney's fees against

23  the City.  (Id.)

24        As mentioned earlier, the County and Plaintiffs negotiated a settlement

25  agreement, pursuant to which Plaintiffs' counsel recovered the stipulated attorney's fees

26  and costs from the County in the amount of $150,000.  (ECF Nos. 106, 108.)  In support

27  of the request for approval of that amount, Plaintiffs' attorneys filed Class Counsel's

28  Application for Approval of Stipulated Attorney's Fees and Reimbursement of Costs.

1   (ECF No. 112).

2   That Application included a declaration by Mr. Merin, according to which Mr. Merin's law

3   firm had expended a total of 899 hours of attorney time handling this case between

4   August 20, 2007 and March 3, 2010, exclusive of hours devoted solely to issues and

5   motions pertaining to the City.  (ECF No. 112-1, ¶ 26.)  Mr. Merin's declaration also

6   included an invoice, dated March 3, 2010 ("County Invoice") that reflected all attorney's

7   fees generated by Mr. Merin's law firm relating to this case between August 20, 2007

8   and March 3, 2010.  (ECF No. 112-2.)

9        In support of the present Motion for Attorney's Fees against the City, Mr. Merin

10   submitted an invoice, dated August 30, 2012 ("the City Invoice"), which covers all

11   attorney's fees generated by Plaintiffs' attorneys between March 5, 2007 and August 30,

12   2012.  (ECF No. 225-2.)  Thus, there is an overlap in dates between the County Invoice

13   and the City Invoice to the extent that both documents cover the period prior to March 3,

14   2010.  The City now takes issue with "serious and significant unexplained discrepancies

15   between the attorney's fee entries" for the time period prior to March 3, 2010 as listed in

16   the County Invoice and the City Invoice.  (ECF No. 231, at 5.)  The Court, like the City,

17   finds these discrepancies problematic.

18        In particular, none of the billing records that are listed on the City Invoice for the

19   period from March 5, 2007 to August 20, 2007 were included on the County invoice.

20   While the Court understands why Plaintiffs' counsel might have chosen to exclude from

21   the County Invoice the hours pertaining solely to the City,[6] it is puzzling why none of the

22   numerous entries pertaining to the City and County jointly were listed on the County

23   Invoice previously submitted by Mr. Merin to the Court.  Plaintiffs have failed to provide

24   any explanation for the discrepancy besides assuring the Court that "the hours were

25   worked, and, in fact, it is apparent that they were necessarily worked, even though they

26

27        [6] According to Mr. Merin's 2010 Declaration, the billing records in the County Invoice relate to
     work concerning only the County or work related to both the City and County jointly as defendants, and do
28   not include work done solely on issues and motions pertaining to the City.  (ECF No. 112-1 ¶ 27.)

1    were not included on the County Invoice." (ECF No. 234, at 3.)

2          Further, the City Invoice lists a total of 1718.75 hours spent by attorneys from the

3    Merin law firm from August 20, 2007 through March 3, 2010, while the County Invoice

4    listed only 899 hours for the same time period. This discrepancy can be explained, in

5    part, by the fact that the County Invoice did not include hours spent on issues pertaining

6    only to the City and the fact that none of Mr. Blubaugh's hours were included on the

7    County Invoice. (See id. at 3-5.) However, the City Invoice also includes numerous

8    billing entries pertaining to work by Mr. Merin's firm on matters relating to the City and

9    County jointly that were not included on the County Invoice.[7] Additionally, approximately

10   one-quarter of all the billing entries that appear on the County Invoice are also

11   designated as City-only tasks on the City Invoice. This fact suggests that, contrary to

12   Plaintiffs' counsel's explanation, the County Invoice did include billing records for tasks

13   pertaining solely to the City.

14         The Court agrees with the City that the only plausible explanation for the above-

15   mentioned discrepancies is that attorneys from Mr. Merin's law office did not keep

16   contemporaneous records of the time expended but instead base their instant attorney's

17   fee request on reconstructed records. Plaintiffs do not appear to argue that they kept

18   contemporaneous billing records but instead contend that their failure to keep such

19   records is not a ground for any fee award reductions. (Id. at 8.) The Court is not

20   persuaded by Plaintiffs' reasoning.

21   ///

22   ///

23   

---

24         [7] For example, the billing entry for August 30, 2007 in the City Invoice reflects that Mr. Merin spent
     three hours of "City time" performing a task described as "Confirm demands; attend negotiations meeting,"
25   and that all three attorneys spent one hour of "City & County time" to "meet with legal team." (ECF No.
     225-2 at 6.) However, according to the County Invoice, the only task performed by Mr. Merin's firm on that
26   date was to "configure demands-outline negotiations meeting," which took three hours to perform. (ECF
     No. 112-2 at 3.) The billing entry for August 7, 2007 in the City Invoice states that Mr. Merin, working on a
27   joint City-County matter, spent one hour to "receive and review memo from Kelly Tenalape re informal
     discovery." (ECF No. 225-2 at 6.) However, this entry is not included at all on the County Invoice. These
28   are only two of numerous discrepancies demonstrating that the City Invoice contains entries that should
     have been, but were not, listed on the County Invoice by Mr. Merin's law firm.

1   ///

2        The Ninth Circuit allows district courts to reduce an award of attorney's fees for

3   counsel's failure to keep contemporaneous records.  See Fischer v. SJB-P.D. Inc.,

4   214 F.3d 1115, 1121 (9th Cir. 2000) (although the lack of contemporaneous records is

5   not "a valid basis for denying the fee application in its entirety," such a deficiency "may

6   ultimately provide the district court with a reason to reduce the fee."); see also Hensley,

7   461 U.S. at 439 n.13 (concluding that the district court properly reduced the hours of one

8   attorney to account for, among other things, failure to keep contemporaneous records);

9   Apple, Inc. v. Samsung Electronics Co., Ltd., 2012 WL 5451411, at *3 (N.D. Cal. Nov. 7,

10   2012) ("[P]arties [seeking attorney's fees] are subject to a reduction in the hours

11   awarded when they fail to provide adequate documentation, notably contemporaneous

12   time records.").

13        As the Court stated during the hearing, the reconstruction of time records can be

14   difficult, and the reliability of such reconstructed billing records is inherently suspect.

15   The discrepancies in the two invoices submitted by Plaintiffs' counsel for the same time

16   period also cast doubts on the overall accuracy of counsel's billing practices.  Although

17   counsel's failure to keep contemporaneous records does not warrant denying them all

18   attorney's fees for the period at issue, a ten percent reduction in the amount of the

19   overall award is warranted under the Ninth Circuit precedents.  See Moreno, 534 F.3d at

20   1112 (a district court may impose a ten-percent reduction in the amount of the attorney's

21   fee award "based on its exercise of discretion and without a more specific explanation"

22   as to which fees were duplicative or unreasonable).  Accordingly, the Court will reduce

23   the amount of attorney's fees requested by Mr. Merin and Ms. Williams for their work on

24   this case by ten percent.

25        As to the time expended on this case by Mr. Blubaugh, Plaintiffs have clarified

26   that none of the hours worked by Mr. Blubaugh were listed on the County Invoice

27   because the County Invoice reflected only hours worked by attorneys from Mr. Merin's

28   office.  (ECF No. 234, at 5.)  The Court finds this explanation to be satisfactory and

1  accordingly declines to reduce the number of hours claimed by Mr. Blubaugh.

2          **C.**      **Absence of Specificity in Fee Entries**

3

4         The City contends that many of the entry descriptions set forth in the City Invoice

5  are "insufficient or inadequate in terms of specifics, description or detail to warrant

6  payment by the City."  (ECF No. 231, at 5.)  As a preliminary matter, the Court will only

7  consider those hours that are disputed by Defendants, while awarding Plaintiffs all

8  undisputed hours.  See Moreno, 534 F.3d at 1116 (explaining that a district court should

9  "normally grant" a fee request unless "opposing counsel can[ ] come up with specific

10  reasons for reducing the fee request").  The City has compiled a list of billing entries it

11  believes to be insufficiently detailed and requests that the Court reduce recoverable

12  attorney's fees by 597.75 hours.[8]  (ECF No. 231, at 11 & Ex. 6.)

13         "A fee applicant bears the burden of establishing entitlement to an award and

14  documenting the appropriate hours expended . . ."  Hensley, 461 U.S. at 437.  Although

15  Plaintiffs' attorneys are "not required to record in great detail how each minute of [their]

16  time was expended," they "should identify the general subject matter of [their] time

17  expenditures."  Id. at 437 n.12.  "Illegible, abbreviated time records, submitted in a form

18  not reasonably capable of evaluation, do not satisfy the 'burden of submitting detailed

19  time records justifying the hours claimed.'"  Stewart v. Gates, 987 F.2d 1450, 1453

20  (9th Cir. 1993).  Therefore, "[w]here the documentation of hours is inadequate, the

21  district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.  However,

22  Plaintiffs' attorneys "need only keep records in sufficient detail that a neutral judge can

23  make a fair evaluation of the time expended, the nature and need for the service, and

24  the reasonable fees to be allowed."  United Steelworkers of Am. v. Retirement Income

25  Plan, 512 F.3d 555, 565 (9th Cir. 2008) (internal quotation marks and citation omitted).

26  ///

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28     [8] There appears to be a mistake in the City's time computations.  According to the Court's
calculations, the number of hours disputed by the City constitutes 599.25 hours.  (See ECF No. 231 Ex. 6.)

1  ///

2       After reviewing the billing entries provided by Plaintiffs' counsel, the Court finds

3  that many of the records disputed by the City in fact lack the requisite specificity.  In

4  particular, Attorney Williams submitted seventeen billing entries for "research" (for a total

5  of 60.5 hours) without any other details as to the nature or subject matter of the research

6  performed.[9]  Further, Plaintiffs' billing records contain numerous entries that say "meet

7  with legal team" or "meet with Mark and Cathleen" without providing any details as to the

8  purpose or subject-matter of such meetings.[10]  Other similarly inadequate records

9  include multiple entries for "telephone calls with counsel," "conference with counsel,"

10  "draft documents," "correspondence," etc.

11       The vagueness of these and other similarly deficient billing entries makes it

12  difficult for the Court to assess whether the time claimed by Plaintiffs' attorneys was

13  reasonably expended.  See Davis v. Prison Health Serv., 2012 WL 4462520, at *11-12

14  (N.D. Cal. Sept. 25, 2012) (concluding that such billing entries as "conference calls with

15  co-counsel," "review e-mail from opposing counsel," "review e-mail chain," "draft e-mail,"

16  and "legal research" were insufficiently detailed and reducing the fee award on that

17  ground); McCarthy v. R.J. Reynolds Tobacco Co., 2011 WL 4928623, at *4 (E.D. Cal.

18  Oct. 17, 2011) (reducing a fee award where most of counsel's entries referred generally

19  to "legal research" and "conversations with [co-counsel]" without identifying the subject

20  matter of the research or conversations"); Ambriz v. Arrow Fin. Serv., LLC, 2008 WL

21  2095617, at *6 (C.D. Cal. May 15, 2008) (finding that billing entries for a "telephone

22  conference" were inadequate because the Court could not determine the

23  reasonableness of the time spent without being provided any information on the "nature

24  of the conference"); Lowe v. Unum Life Ins. Co. of Am., 2007 WL 4374020, at *4-5 (E.D.

25  Cal. Dec. 14, 2007) (denying attorney's fees for time spent on "monthly file review,"

26  _____

27  [9] See, for example, billing entries dated 08/29/2007, 01/23/2008, 02/17/2008, 05/20/2008, etc. (ECF No. 225-2.)

28  [10] See, for example, billing entries dated 08/30/2007, 11/08/2007, 11/30/2007, 04/23/2008, etc. (ECF No. 225-2.)

1    "review" and "paperwork" for lack of sufficiently detailed time records).

2          The Court is not willing to spend its limited time and resources for the entry-by-

3    entry review of the voluminous billing records submitted by Plaintiffs' counsel.  As the

4    Ninth Circuit explained, instead of setting forth an hour-by-hour analysis of a fee request,

5    the court may make an across-the-board percentage cut with respect to disputed hours

6    as a "practical means of trimming the fat" from a fee application.  See Gates v.

7    Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992).  The Court's general review of the

8    billing records disputed by the City has sufficiently demonstrated that many of those

9    records are not specific enough to allow the City and the Court to assess the

10   reasonableness of the time expended on a particular task.  The Court finds that a twenty

11   percent reduction in the number of hours disputed by the City would be equitable.  See

12   Fox, 131 S. Ct. at 2216 ("The essential goal in shifting fees . . . is to do rough justice, not

13   to achieve auditing perfection."); see also McCarthy, 2011 WL 4928623, at *5 (utilizing a

14   one-third reduction of the requested hours where the counsel's billing records lacked

15   sufficient detail); Davis, 2012 WL 4462520, at *12 (imposing a ten-percent reduction on

16   counsel's time because of deficiencies in the billing documentation).

17         As demonstrated by the list compiled by the City, the City disputes as

18   insufficiently detailed billing entries with respect to 136.25 hours expended by Mr. Merin,

19   344.5 hours expended by Ms. Williams, and 118.5 hours expended by Mr. Blubaugh.

20   (ECF No. 231 Ex. 6.)  Accordingly, the Court will implement a twenty percent reduction

21   with respect to the disputed hours and will reduce Mr. Merin's claimed time by 27.25

22   hours, Ms. Williams' time – by 68.9 hours, and Mr. Blubaugh's time – by 23.7 hours.

23

24        **D.**    **Billing Entries Unrelated to the Instant Case**

25

26         The City specifically contests a number of entries on the City Invoice on the

27   ground that the activities referenced in those entries have no apparent connection to

28   legal issues concerning this case.  (ECF No. 231, at 11-12.)

1    ///

2    In particular, the City argues that Plaintiffs' attorneys are not entitled to any

3    compensation with respect to the following billing entries: "Review press release re

4    lawsuit; prepare for press conference"; "Prepare and appearance for radio show";

5    "Receive/review San Diego Pleadings"; "Meeting with funds for research Project re

6    Apartments-Round Table"; "Review map of social services"; and "Research re steps,

7    alternative."  (Id.)

8          Hours spent for media contacts and press conferences are generally not

9    compensable.  See Gates v. Gomez, 60 F.3d 525, 535 (9th Cir. 1995) (finding that

10   district court abused its discretion in awarding fees for time spent for media contacts

11   because "[t]hese are the kinds of activities that attorneys generally do at their own

12   expense."); Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal.,

13   813 F.2d 217, 221 (9th Cir.1987) (concluding that the district court "reasonably

14   disallowed time spent on publicity"); Taylor, 2009 WL 453050, at *18  (declining to award

15   attorney's fees for contacts with press because "it is not reasonable to charge one's

16   opponent for media time"); Camarillo v. City of Maywood, 2011 WL 3665028, at *13

17   (C.D. Cal. Aug. 22, 2011) (concluding that plaintiffs' attorney's fees regarding efforts with

18   the media and the press are not compensable).  Accordingly, the Court will reduce

19   compensable time by five hours expended by Mr. Merin on June 27 and 28, 2007, to

20   prepare for a press conference and to appear on a radio show.  (See ECF No. 225-2, at

21   3.)  However, the Court will allow attorney's fees for the remaining billing entries because

22   it finds that Plaintiffs' counsel provided an adequate explanation in their memorandum to

23   the Court and during the oral argument demonstrating that the contested billing records

24   reflect compensable work related to the subject-matter of this litigation.

25   ///

26   ///

27   ///

28   ///

1  ///

2  ### E.   Plaintiffs' Limited Success

3

4  The City argues Plaintiffs' attorney's fees should be reduced across-the-board by

5  fifty percent to account for Plaintiffs' limited success in this matter. (ECF No. 231, at 16.)

6  "[T]he extent of a plaintiff's success is a crucial factor in determining the proper

7  amount of an award of attorney's fees under 42 U.S.C. § 1988." Hensley, 461 U.S. at

8  440.  The court must reduce the amount of attorney's compensation "where the plaintiff

9  has obtained limited success on his pleaded claims, and the result does not confer a

10  meaningful public benefit." McCown, 565 F.3d at 1103.  In assessing the party's

11  success, the Supreme Court has rejected "a mathematical approach comparing the total

12  number of issues in the case with those actually prevailed upon." Hensley, 461 U.S. at

13  435 n. 11; see also McGinnis v. Kentucky Fried Chicken of Cal., 51 F.3d 805, 808-09

14  (9th Cir. 1995) (concluding that rigid arithmetic proration "makes no practical sense");

15  McCown, 565 F.3d at 1104 ("[T]he Supreme Court has disavowed a test of strict

16  proportionality.").

17  Although there is no test of strict proportionality, the trial court should take into

18  account the final results obtained in a case versus what the plaintiff sought at the outset

19  of the litigation.  Cunningham v. County of Los Angeles, 879 F.2d 481, 486 (9th Cir.

20  1988); Webb v. Sloan, 330 F.3d 1158, 1169-70 (9th Cir. 2003).  In particular, the court

21  must consider: (1) whether "the plaintiff fail[ed] to prevent on claims that were unrelated

22  to the claims on which he succeeded," and (2) whether "the plaintiff achiev[ed] a level of

23  success that makes the hours reasonably extended a satisfactory basis for making a fee

24  award." Hensley, 461 U.S. at 434.  The Ninth Circuit explained this two-step analysis as

25  follows:

26  ///

27  ///

28  ///

22

///

> The first step requires the district court to determine whether the successful and unsuccessful claims were unrelated. Claims are unrelated if the successful and unsuccessful claims are distinctly different both legally and factually; claims are related, however, if they involve a common core of facts or are based on related legal theories. At bottom, the focus is on whether the unsuccessful and successful claims arose out of the same course of conduct. If they did not, the hours expended on the unsuccessful claims should not be included in the fee award.

> If, however, the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. When a plaintiff has achieved only partial or limited success, however, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee.

Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005) (internal quotation marks, quotation alterations and citations omitted).

Accordingly, a plaintiff "need not prevail on every claim in order to receive a full fee." Deukmejian, 987 F.2d at 1404. "[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." McCown, 565 F.3d at 1103.

The City urges the Court to measure Plaintiffs' success in this litigation by comparing the number of plaintiffs, defendants and claims at the outset of this case and at the conclusion of the litigation. (ECF No. 231, at 12-16.) According to the City, Plaintiffs have obtained only a limited success because only one named plaintiff (out of fourteen initially named), one defendant (out of four originally named), and two causes of action (out of three originally asserted) remained after the City's motion for summary judgment/summary adjudication was partially granted by this Court. (Id. at 13.)

1    ///

2    Further, the City points out that, following the jury trial, the jury answered "no" on several

3    questions that related to claims asserted by Plaintiffs against the City.  (Id. at 14.)

4          The Court does not believe that summary adjudication on Plaintiffs' Eighth

5    Amendment claim warrants a reduction in Plaintiffs' attorney's fee award.  As

6    demonstrated by the FAC, the Eighth Amendment claim was integrally related to the

7    remaining Fourth and Fourteenth Amendment claims because it arose out of the same

8    allegedly wrongful conduct.  In particular, Plaintiffs asserted in their FAC that both the

9    City's policy of citing homeless individuals for illegal camping and the policy of property

10   confiscations were implemented in furtherance of the City's campaign to "sweep

11   homeless people from the areas along the American and Sacramento rivers and from

12   public and private property in the City."  (FAC ¶¶ 9-10, 67, 69, 71.)  Because all of

13   Plaintiffs' claims arose out of a common core of facts and a common course of conduct,

14   the Court cannot say that the Eighth Amendment claim dismissed as a result of the

15   City's motion for summary judgment was "entirely distinct and separate" from Plaintiffs'

16   successful claims.  See Soreson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001).

17         The City further argues that Plaintiffs' limited success in this matter is evidenced

18   by the Court's dismissal of thirteen out of the fourteen originally named plaintiffs, and of

19   three out of the four originally named defendants.  (ECF No. 231, at 13.)  However, the

20   dismissal of most of the named plaintiffs does not diminish the results obtained by

21   Plaintiffs in this litigation because this case was ultimately certified as a class action

22   resulting in awarding compensation to more than a thousand of approved claimants.

23   Also, dismissal of some of the initially named defendants did not affect any of the issues

24   in this litigation because all of the dismissed defendants were the City employees,

25   whose acts were deemed to be those of the City.  Accordingly, the Court finds that the

26   dismissal of most of the initially named plaintiffs and defendants does not diminish the

27   level of Plaintiffs' overall success in this litigation.

28   ///

                                    24

1  ///

2      The City further contends that the Court should reduce the lodestar amount

3  because the jury gave negative answers on several of the questions on the Special

4  Verdict Form.  (Id. at 14-15.)  While the City is correct in that the jury did not agree that

5  the City had some of the unconstitutional practices alleged by Plaintiffs, the jury did

6  ultimately conclude that the City was liable for seizing and destroying the class

7  members' property, that the City had a longstanding practice of not giving adequate

8  notice to homeless individuals concerning how they could retrieve their property, and

9  that the City had a longstanding practice of failing to implement appropriate policies

10  concerning the booking and handling of homeless individual's property.  (ECF No. 187.)

11  This result allowed Plaintiffs to obtain the settlement with the City providing the class

12  members with compensation for the lost property.  Thus, by prevailing against the City at

13  a trial on the merits and by negotiating the subsequent settlement with respect to

14  payment of compensation to the members of the class, Plaintiffs' attorneys were able to

15  secure relief for all class members who had property removed, confiscated and/or

16  destroyed by the City.  Even if the jury answered "yes" on other questions on the Special

17  Verdict Form, it would not have entitled the members of the class to receive any more

18  than they did as a result of this litigation.

19      Further, "in determining a reasonable fee award . . ., the district court should

20  consider not only the monetary results but also the significant nonmonetary results

21  [plaintiff] achieved for himself and other members of society."  Morales v. City of San

22  Rafael, 96 F.3d 359, 365 (9th Cir. 1996); see also McCown, 565 F.3d at 1104 ("[T]he

23  district court must consider the excellence of the overall result, not merely the amount of

24  damages won.").  To determine the public benefit of a suit, the court "should consider

25  whether the plaintiff has affected a change in policy or a deterrent to widespread civil

26  rights violations."  McCown, 565 F.3d at 1105.  Here, as a result of this litigation, the City

27  has agreed to change its policies and procedures with respect to removal, confiscation

28  and destruction of homeless persons' property – the result which undoubtedly serves a

1 | broader public interest.

2 |      In sum, the Court concludes that Plaintiffs have obtained "an excellent result" by:

3 | (1) obtaining a full compensation for those individuals whose items were wrongfully

4 | seized and destroyed by the City; and (2) by making the City to agree to put into place

5 | certain notice and storage of property procedures and policies that are supposed to

6 | prevent similar constitutional violations in the future.  Accordingly, the Court will not

7 | reduce the attorney's fee award based on Plaintiffs' limited success in this litigation.

8 |

9 |      **F.**     **Lodestar**

10 |

11 |      For the reasons stated above, the Court will make the following deduction from

12 | the amount of attorney's fees requested by Plaintiffs:[11]

13 |      <u>Mr. Merin</u>

| | |
|---|---|
| Hourly Rate | $ 400 |
| Total Hours Claimed | 754.00 |
| Deduction for failure to keep contemporaneous records | - 75.40 |
| Deduction for lack of specificity | - 27.25 |
| Deduction for media time | - 5.00 |
| Compensable hours | 646.35 |
| **Attorney's Fee Award** | **$ 258,540.00** |

21 | ///

22 | ///

23 | ///

---

24 | [11] According to the City Invoice, Plaintiffs' attorneys expended 2,794.5 hours litigating this case.
25 | (ECF No. 225-1.)  Out of this total, 1,887 hours were spent on matters pertaining solely to the City, 201.5 hours – on matters pertaining solely to the County, and 706 hours – on joint City-County matters.  (<u>Id.</u>)
26 | The Court agrees with Plaintiffs that the most equitable way of dealing with the attorney's fees pertaining to joint City-County matters would be to apportion one half of those fees to the City.  Accordingly, after deducting all County hours and half of the City-County hours from the total number of hours listed, the City
27 | Invoice contains 2240 hours attributable to City matters.  (<u>See</u> ECF No. 224-1 at 12.)  Out of these 2240 hours, 754 hours were expended by Mr. Merin, 1346 hours – by Ms. Williams, and 140 hours by
28 | Mr. Blubaugh.  (ECF No. 225-1.)

///

    <u>Ms. Williams</u>

| | |
|---|---|
| Hourly Rate | $ 400 |
| Total Hours Claimed | 1346 |
| Deduction for failure to keep contemporaneous records | - 134.6 |
| Deduction for lack of specificity | - 68.9 |
| Compensable hours | 1,142.5 |
| **Attorney's Fee Award** | **$ 457,000.00** |

    <u>Mr. Blubaugh</u>

| | |
|---|---|
| Hourly Rate | $260 |
| Total Hours Claimed | 140 |
| Deduction for lack of specificity | - 23.7 |
| Compensable hours | 116.3 |
| **Attorney's Fee Award** | **$ 30,238.00** |

Based on the forgoing analysis, the lodestar amount of compensable attorney's fees in this case constitutes $745,778.00.


### G.     Multiplier

Plaintiffs ask the Court to use a multiplier of 1.5 to increase Plaintiffs' award of attorney's fees based on the <u>Kerr</u> factors.  (ECF No. 224-1, at 14-15.)  As explained above, the lodestar figure is presumptively reasonable.  <u>Van Gerwen</u>, 214 F.3d at 1045. Accordingly, "a multiplier may be used to adjust the lodestar amount . . . only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high."  <u>Id.</u>

///

///

///

Plaintiffs' attorneys argue that the multiplier is appropriate based on the following factors: (1) although the City had a long history of unconstitutional sweeps of homeless camps, no case has ever been brought for compensation for the loss of such property because of the difficulty of establishing a constitutional violation; (2) City officers "uniformly denied and attempted to contradict the testimony of Plaintiffs' witnesses, claiming that no property was lost"; and (3) enhancement is necessary to provide fair and reasonable compensation because civil rights lawyers practicing in the Bay Area typically receive awards of $700 and $800 per hour in similar civil rights cases, but "are not lured to Sacramento and the Eastern District by the local rates."  (ECF No. 234, at 10-11.)  The reasons provided by Plaintiffs' counsel do not warrant the use of a multiplier.  Any litigation challenging long-standing government practices - which is not a rare occurrence - will involve substantial legal research and factual investigation. Additionally, any novelty and complexity relating to this case is adequately reflected in the high hourly rate for all three attorneys and a high number of attorney hours claimed by Plaintiffs' counsel for the work related to this case.  See Blum, 465 U.S. at 898-900. Finally, as the Court explained earlier, the rates charged by the Bay Area attorneys for similar legal services are of no consequence in determining an award of attorney's fees in a case litigated in the Eastern District of California by local counsel.

Accordingly, the Court finds that the lodestar amount of attorney's fees is reasonable and does not require a multiplier.  Therefore, Plaintiffs' request to enhance the lodestar amount by a 1.5 multiplier is denied.

H.     Expenses

"Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  Dang, 422 F.3d at 814 (internal citations and quotation marks omitted).  "Such

1    out-of-pocket expenses are recoverable when reasonable."  Id.

2    Plaintiffs seek reimbursement for $37,301.58 in costs incurred in litigating this case.

3    (ECF No. 224-1, at 17; ECF No. 225-3.)  The City does not dispute that Plaintiffs are

4    entitled to be compensated for their litigation-related expenses and does not object to

5    the requested amount.  Accordingly, the Court finds the expenses and costs to be

6    reasonable and awards Plaintiffs $37,301.58 in out-of-pocket expenses.

7

8                                    **CONCLUSION**

9

10         Based on the foregoing, Plaintiffs' Motion for Attorney's Fees and Costs (ECF

11   No. 224) is GRANTED, in part.  Plaintiffs are entitled to attorney's fees in the amount of

12   **$745,778.00** and litigation expenses in the amount of **$37,301.58**, for a total of

13   **$783,079.58.**  Defendant, the City of Sacramento, is accordingly directed to pay

14   **$783,079.58** to Plaintiffs.

15         IT IS SO ORDERED.

16   APRIL 1, 2013

17

18   _____

19   MORRISON C. ENGLAND, JR., CHIEF JUDGE
     UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28